THE PEOPLE *ex rel.* Richard J. Fullerton

*v.*

HIRAM T. GILBERT, County Judge.

· *Filed at Ottawa November 14, 1885.*

1. APPEAL—*from order of county court, on inquiry as to the sanity of a person.* No appeal will lie from a finding and order of the county court in a proceeding to inquire into the alleged insanity of a person, had under the "Act to revise the laws in relation to the commitment and detention of lunatics," approved March 21, 1874.

2. INSANE PERSON—*on recovery, entitled to discharge from hospital— remedy in case of improper detention.* If a person adjudged insane, and committed to the hospital for the insane, shall be restored to reason, he will be entitled to be discharged, and if he shall be afterward detained against his wishes, the law gives him a remedy by the writ of *habeas corpus.*

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of La Salle county; the Hon. CHARLES BLANCHARD, Judge, presiding.

Messrs. FOWLER BROS., and Mr. J. B. RICE, for the plaintiff in error.

Mr. M. T. MOLONEY, for the defendant in error.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was a petition filed in the circuit court of La Salle county, for a writ of *mandamus* to Hiram T. Gilbert, judge of the county court of La Salle county, commanding him to allow the relator, Richard J. Fullerton, an appeal to the circuit court of La Salle county, from a finding that the latter was insane, in a proceeding had in said county court. The petition alleges that in such proceeding to inquire into relator's alleged insanity, he was brought before said county court, and a trial had; that having as many as twenty-five witnesses

present to testify to his sanity, the court limited him to the calling of only five of such witnesses and two physicians; that after the jury had retired to consider of their verdict, and had been out some time without agreeing, the judge of said county court called the jury before him, and, in the absence of relator and his counsel, instructed the jury orally, and sent the jury back to consider further of their verdict, and that afterwards, the jury not agreeing upon their verdict, the said county judge again called the jury into his presence, and after giving them further oral instructions, the jury again retired, and under the direction of said county judge took the relator with them to their room, and after there remaining about two hours with relator, and after further consideration, they returned their verdict finding the relator to be insane, and a fit person to be sent to the State hospital, whereupon it was ordered by the said county court that the verdict be entered of record, that the clerk transmit a copy of the verdict to the superintendent of said hospital, and that the conservator of the relator pay all the costs of the proceeding out of the relator's estate; that thereupon the relator prayed an appeal to the circuit court of La Salle county, which was disallowed. The petition avers that the relator is sane. The circuit court sustained a demurrer to the petition, and dismissed the same. The Appellate Court for the Second District affirmed the judgment, and the case is brought to this court on error.

The sole question here presented is, whether the right of appeal from the finding and order in the county court exists in this proceeding to inquire into the alleged insanity of a person. That proceeding was had under chapter 85 of the Revised Statutes of 1874, page 681, entitled "An act to revise the law in relation to the commitment and detention of lunatics," approved March 21, 1874, in force July 1, 1874. The act itself gives no right of appeal. But it is insisted that it is given by section 122 of the "Act to extend the jurisdiction

of county courts, and to provide for the practice thereof,"
approved March 26, 1874, in force July 1, 1874, (Rev. Stat.
1874, p. 344,) it being, that "appeals may be taken from the
final orders, judgments and decrees of the county courts to the
circuit courts, in all matters," with some exceptions which do
not include this case, "upon such appeal the case shall be
tried *de novo.*" Broad as is the language here used, we are
not of the opinion that it embraces the matter of this pro-
ceeding in question. An appeal is not compatible with the
nature of the proceeding. It respects an unfortunate class
of persons who, from want of reason, are unable to take care
of themselves, and where the State interposes for their pro-
tection and care. The proceeding is an inquest as to the
state of one's mind,—to inquire whether or not he is insane;
and it is a preliminary step to the admission of a person into
an asylum for the insane, it being a provision in section 22
of this chapter 85, that no person shall be received into a
State hospital for the insane, or into any hospital or asylum
for the insane in the State, unless he shall have been declared
insane by the verdict of a jury, and authorized to be confined
by order of court. The jury trying the question is to be one
of six persons, one of the number being a physician, and upon
return of a verdict that the person is insane, the court is re-
quired to enter an order that the insane person be committed
to a State hospital for the insane. The taking an appeal
would suspend the proceeding and leave the insane person
at large until the appeal, and, perhaps, further successive
appeals, could be decided, while there might be necessity for
the person's own safety and benefit, as well as the safety of
others, that he should be immediately placed in an insane
asylum for confinement, and to receive medical treatment
there. In the case of an appeal there is always an appeal
bond provided for, which is supposed to be a full indemnity
against all the inconvenience of delay from the appeal. But
an appeal bond would be utterly useless in the way of obviat-

ing or in any way indemnifying against the mischief of the delay which would be caused by the taking of an appeal in such a case as this.   An appeal would frustrate the object of the proceeding,—the immediate commitment of a person deemed to be insane, to an institution for the insane for safe keeping and treatment.   The act makes provision for the temporary detention of the person alleged to be insane, if deemed necessary, pending the proceeding, and previous to the verdict, and after verdict, and pending admission to the hospital, by providing that the court may make such order in that behalf as the case may require, and that a certified copy of the order shall authorize the person to be temporarily detained by the sheriff, jailor or other suitable person to whom the order shall be directed.   But no provision is made for any such temporary detention pending an appeal,—a manifestation that no appeal was intended to be given.   It is true, that notwithstanding the contrary finding of the jury, the alleged insane person might be sane, and the ill-consequences supposed might not result from the allowance of an appeal. But if the appeal lies, it lies in all cases equally, whether the person be a raving maniac, mildly affected with insanity, or be in fact sane.   There can be no distinction made.   The finding of the jury and the order of the court, at least, must be taken as presumptive evidence that the person alleged to be insane is insane, and that his case renders proper his immediate commitment to the State hospital for the insane, and that the delay of an appeal might be fraught with injurious consequences.

The 20th section of the act provides that when any patient committed to the hospital shall be restored to reason, he shall be discharged, and that if he be detained afterward, contrary to his wishes, he shall have the privilege of a writ of *habeas corpus* at all times.   Here is a remedy provided by the act itself, for the case of a sane person, more speedy than that of an appeal.   Whether or not a writ of error would lie, we

express no opinion, that question not being before us. Chapter 86 (approved March 26, 1874, Rev. Stat. 1874, p. 685,) which provides for a similar inquiry by a jury, to ascertain whether a person is an idiot, lunatic, or distracted, in order for the appointment of a conservator to take charge of and manage his estate, provides for an appeal from the finding. The two acts are, to a certain extent, *in pari materia,* and giving an appeal under the one; and not under the other, tends to show the legislative intention that there should be no appeal in the latter case.

We are of opinion there was no right of appeal in the case, and that the circuit court rightly sustained the demurrer, and dismissed the petition.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*