In the Matter of JESSIE B. CROUSE, *non compos*.

JESSIE B. CROUSE, Appellant, v. J. B. GREENS-
FELDER, Guardian, Respondent.

**St. Louis Court of Appeals. Submitted on Briefs April 28, 1909.
Opinion filed June 22, 1909.**

1. APPEALS: Insane Persons: Adjudication of Insanity: Stat-
   utes. Section 1674, Revised Statutes 1899, does not authorize
   an appeal from a judgment of a probate court in proceedings
   directly connected with the adjudication of soundness or un-
   soundness of mind, under sections 3650, 3651, 3652, 3653 and
   3654, Revised Statutes 1899.

2. VERDICTS: Conclusiveness of Two Verdicts: Statute. The
   prohibition of section 3657, Revised Statutes 1899, upon more
   than two trials on concurring verdicts in a proceeding to de-
   termine the soundness or unsoundness of mind of a person
   would seem to be binding on the appellate, circuit and probate
   courts alike.

3. UNSOUND MIND: Idiots: Raving Maniacs: Statute. Under
   section 3702, Revised Statutes 1899, there is no distinction be-
   ·tween irresponsible persons, persons of unsound mind, idiots,
   and raving maniacs so far as proceedings under the chapter of
   which said section forms a part are concerned.

4. APPEALS: Judgments of Probate Courts: Special Proceed-
   ings and Adversary Suits: Statute. Section 1674, Revised
   Statutes 1899, authorizing an appeal from the judgments and
   orders of probate courts, in certain cases, applies to suits and
   actions where there are adverse claims, and not to special pro-
   ceedings, such as proceedings to adjudicate the question of
   lunacy.

Appeal from St. Louis County Circuit Court.—*Hon.
John W. McElhinney*, Judge.

AFFIRMED.

*John Lally* for respondent.

(1) The circuit court erred in refusing to hear or
take jurisdiction of this case upon appeal to it; the
appeal was from a judgment of the probate court based

upon the verdict of a jury, and the right of appeal from such judgment is expressly given by statute. Sec. 1674, R. S. 1899; Coleman v. Farrar, 112 Mo. 54; In re Marquis, 85 Mo. 615.

*C. H. Kern* and *Sam D. Hodgdon* for respondent.

(1) The jurisdiction of the probate court is of statutory creation and of limited jurisdiction and as such is dependent on and restricted by the act creating it. Kenrick v. Cole, 46 Mo. 85; Snoddy v. Pettis Co., 45 Mo. 361; State ex rel. v. Fowler, 108 Mo. App. 469. (2) Chapter 1, art. XIV, sec. 278, defines the decisions of the probate court from which an appeal will lie and unless specifically authorized by some clause thereof an appeal will not lie to the circuit court. Kenrick v. Cole, 46 Mo. 85; Flick v. Schenk, 212 Mo. 275; State ex rel. v. Fowler, 108 Mo. 465; State ex rel. v. Guinotte, 113 Mo. App. 399. (3) An appeal in a lunacy proceeding not being specifically provided for in our statutes will not lie from a decision of the probate court to the circuit court. Morris v. Morris, 128 Mo. App. 675; State ex rel. v. Jackson, 93 Mo. App. 520.

STATEMENT.—Information in writing as provided by section 3650, Revised Statutes 1899, was filed in the probate court of the county of St. Louis, to the effect that one Jessie B. Crouse was of unsound mind and incapable of managing her affairs. On a trial in that court before a jury, a verdict was rendered declaring her of unsound mind, whereupon the probate court appointed J. B. Greensfelder as her guardian. Jessie B. Crouse filed her motion to have the inquisition and the verdict of the jury and the appointment of the guardian set aside, alleging as grounds for the motion, that the probate court of St. Louis county did not have jurisdiction over her person and estate at the time the judgment and appointment was made and entered; that she was not in the county of St. Louis within the mean-

ing of the laws of the State of Missouri relating to insane persons, at or prior to the time the court entertained jurisdiction of the matter and entered upon the inquisition; that she was not of unsound mind; that no good cause was shown to the court for the exercise of its jurisdiction, and that it was not shown to the court that Mrs. Crouse was the owner of any property. This motion was signed by the attorney for Jessie B. Crouse. It was overruled by the probate court, and at the same term Jessie B. Crouse filed her application, supported by affidavit, praying an appeal to the circuit court of the county. The appeal was allowed. At the return term of the circuit court, the guardian filed a motion to dismiss the appeal on the ground that the appeal was taken without any warrant or authority on the part of said Jessie B. Crouse; that it was improperly allowed by the probate court of St. Louis county; that the inquisition whereby Jessie B. Crouse was declared to be of unsound mind is a strictly statutory proceeding and that all proceedings thereunder are required to be in accordance with the statute governing such cases; that the statute governing such cases does not allow an appeal from such proceedings, and that the circuit court has no jurisdiction to hear or determine any matters brought before it on appeal from the probate court in a case of this kind. The motion was sustained by the court and the appeal dismissed. Whereupon Jessie B. Crouse filed an affidavit for an appeal to this court which was allowed, bill of exceptions signed and filed and the case is here on her appeal.

REYNOLDS, P. J. (after stating the facts).— Counsel for appellant relies on section 1674, Revised Statutes 1899, which by the fourth subdivision confers upon the circuit courts appellate jurisdiction "from the judgments and orders of county courts, probate courts and justices of the peace, in all cases not ex-

pressly prohibited by law, and shall possess a superintending control over them, and a general control over executors, administrators, guardians, curators, minors, idiots, lunatics and persons of unsound mind." Referring to this section, this court, in Morris v. Morris, 128 Mo. App. 673, in which case a like right of appeal was attempted to be founded upon this same section, has said: "The superintending control conferred by this section does not embrace an appeal from a decision of the probate court to the circuit court. It can only be exercised by an original writ issuing out of the circuit court, directed to the probate court, as the writ of *certiorari*, mandamus or prohibition. We think appellant has misconceived his remedy." The appeal was not from an adjudication of the fact of lunacy, a proceeding having been unsuccessfully instituted to declare a person insane—the verdict being in favor of the sanity of the party,—and the costs were taxed against the party who instituted the proceeding. It was from the taxation of these costs, that the appeal was taken. It will be observed that in this opinion of the learned judge, no notice is taken of the first clause of subdivision 4, of section 1674, namely, "appellate jurisdiction from the judgments and orders of county courts, probate courts and justices of the peace, in all cases not expressly prohibited by law," the judge basing his conclusion alone on the second clause of this subdivision which gives superintending control, and he holds that that superintending control is not to be exercised through an appeal. We are therefore, in the case at bar, brought to consider the effect of the first clause of this subdivision, granting a right of appeal in all cases in which the appeal "is not expressly prohibited by law."

What is now subdivision 4, of section 1674, R. S. 1899, has appeared in our statutes in substantially the same words for many years. In the Revised Statutes of 1855, it appears as the fourth clause of the eighth

section of the forty-seventh chapter of that revision in this language, "appellate jurisdiction from the judgments and orders of county courts and justices of the peace, in all cases not expressly prohibited by law, and shall possess a superintending control over them." Prior to 1875, when our present constitution was adopted, probate jurisdiction and jurisdiction of proceedings under an inquisition of lunacy, were, by law, vested in the county courts, the few probate courts that we then had existing under special acts, local in their application. Construing this section, in the revision of 1855, the Supreme Court, in Hall v. County Court of Audrain County, 27 Mo. 329, held that under it, the right of appeal lay to the Supreme Court from an order of a county court removing the guardian of an insane person. The right of appeal on this phase of the case was challenged. Judge RICHARDSON, who delivered the opinion, remarked, after quoting this fourth subdivision of section 8, chapter 47, Revised Statutes 1855, that the court had not been referred to any provision of the statute which prohibits an appeal in a case like the one then before the court. Referring to the fifteenth section of the chapter, which defines the exclusive original jurisdiction of the county courts and which enumerates, among other subjects, the power of appointing and displacing the guardians of orphans, minors and persons of unsound mind and closes with the sweeping declaration of the right of appeal in all cases to the circuit court in such manner as may be provided by law, the learned judge holds that while the general right of appeal is given, the manner is not provided, nor the operation of the appeal, nor the manner of the trial of the case in the circuit court on appeal. The absence of all of which, however, the court holds does not affect the right of appeal. The right of appeal on the verdict establishing insanity was not clearly in decision.

In the Matter of Marquis, 85 Mo. 615, the relator filed an information in the probate court of Howard

county, alleging that his father was a person of unsound mind and praying that an inquiry into that be had. The probate court made an order finding him to be a person of unsound mind and incapable of attending to his business. The court entered judgment accordingly and appointed a guardian of his person and estate. At the next regular term of the court, Marquis appeared and moved the court to set aside the judgment, alleging various grounds, among others, that he was not of unsound mind and that the proceeding had been instituted against him without his knowledge and without notice, and that he was in proper condition to be brought into court. The motion was sustained, whereupon the guardian appealed to the circuit court, where the judgment of the probate court was affirmed. From that judgment the guardian appealed to the Supreme Court. The Supreme Court, in an opinion delivered by Judge NORTON, affirmed the judgments of the circuit and probate courts. No question appears to have been made in either court as to the right of appeal, but while no doubt whatever is suggested as to jurisdiction in the matter on appeal or as to the jurisdiction of the circuit court to entertain the appeal, that question was not in decision.

In the case of Coleman v. Farrar, 112 Mo. 54, the question was over the right of appeal from orders approving or disapproving the settlements of a guardian of a person adjudged to have been of unsound mind. In this case Judge GANTT, who delivered the opinion of the court in banc, after holding that even if an appeal was not allowed, it would not affect the jurisdiction of the probate court in the matter of such settlements, uses this language at page 72: "But there is a spirit pervading our statutes to allow appeals from all final judgments of courts, whether of limited or general jurisdiction. As before said, our present uniform system of probate courts was provided for in the Constitution of 1875, and the statute of 1877, which was enacted

to carry out the Constitution. Section 1102, Revised Statutes 1879, provides that 'the circuit courts . . . shall have appellate jurisdiction from the judgments and orders of county courts, probate courts, and justices of the peace, in all cases not expressly prohibited by law, and shall possess a superintending control over them.' If we are correct in holding that the statute contemplated a final judgment and settlement of the guardian's accounts, it 'seems clear that an appeal lies to the circuit court, under section 1102, supra." This section, 1102, R. S. 1879, is section 1674, of the Revised Statutes of 1899. Here again there is no direct decision of the question before us.

Our Supreme Court, in the Marquis case, *supra,* l. c. 617, citing Dutcher v. Hill, 29 Mo. 271, says that, "The proceedings under the law concerning insane persons are not like a final judgment, which is unalterable after the end of the term at which it was rendered. They are *in fieri,* like a cause pending, and irregularities in them or defects of the record may be obviated at any time so long as the lunatic is under the control of the guardian appointed for him. It was competent for the court to discharge the lunatic at any time from the care and custody of the guardian so soon as it was informed of the irregularity of the proceeding." This would seem to mean that a finding on the fact of lunacy is not a final judgment.

In State ex rel. v. Jackson, 93 Mo. App. 516, this court held that while the right of appeal from an adjudication of insanity is by no means clear, as the jurisdiction of the probate court in the case was shown to be lacking on the face of the record, the remedy by *certiorari,* which was the remedy invoked in the case, was appropriate. In this Jackson Case, the attention of the court was not called to this 4th subdivision of section 1674. But the decision falls far short of establishing the right of appeal.

In State ex rel. Twining v. St. Louis Co. Court, 47 Mo. App. 647, this fourth subdivision of section 1674, then section 3318, Revised Statutes 1889, was before this court. Judge BIGGS, speaking of this section 1674 and treating of the right of appeal from the action of a county court granting a dramshop license, says, page 648, that the statute nowhere prohibits an appeal from the county court to the circuit court in any class of cases, therefore, he says, the limitation of the right of appeal found in the statute must be left to interpretation by the courts. Referring to Sheridan v. Fleming, 93 Mo. 321, a decision of the Supreme Court delivered by Judge BLACK, in a case where an application was made to the circuit court for a writ of mandamus requiring the judges of the county court to levy taxes for the payment of a warrant on the county treasury, Judge BIGGS quotes the Supreme Court as holding that appeals are allowed only where, in the nature of the case, the circuit court can try the matter anew and give such judgment as the county court should have given, citing St. L., I. M. & S. Ry. Co. v. St. Louis, 92 Mo. 160. Quoting further from Judge BLACK, as holding that the circuit court, on an appeal could not levy the tax, Judge BIGGS, in the Twining Case, further enlarges on the proposition that it is only when, in the nature of the case, the circuit court can try the matter anew and give such judgment as the county court should have given, that an appeal under this section 1674 lies. In the Twining Case, section 1788, Revised Statutes 1899, is referred to, a section in the article relating to proceedings of the county courts, by which it is enacted that upon appeal from a county court, the appellate court shall proceed to hear and determine the same anew and in the same manner as if such cause had originated in such appellate court, without regard to any error, defect or informality in the proceedings of the county court. There is no corresponding section or grant of a right of appeal to be found in chapter 39,

Revised Statutes 1899, relating to insane persons, but a careful consideration of the decision will show that it is not bottomed on section 1788. The decision in the Twining Case is, that an appeal from the order of the county court, granting a dramshop license, does not lie because, on a trial anew in the circuit court, that court could not proceed *de novo* and enter such order as the county court should have entered. The decision in the Twining case, that the remedy of the relators was by writ of *certiorari*, is distinctly placed on this latter ground.

Section 1674 was before this court again in the case of Barnett v. Pemiscot County Court, 111 Mo. App. 693, where will be found a very elaborate examination and complete collection of the authorities. Judge NORTONI, construing section 1788 with section 1674, holds that an appeal will lie from the county court to the circuit court, only when the judgment or order appealed from is judicial and triable anew in the circuit court, and that an appeal will not lie in a matter or proceedng not judicial in its nature.

It must be admitted that chapter 29, of the Revised Statutes of 1899, contains no provisions whatever for an appeal from the finding and adjudication of a probate court, declaring a person to be of unsound mind, and it has been said by the Supreme Court of the State, in the case of Cox v. Osage County, 103 Mo. 385, 1. c. 389, that the jurisdiction to appoint guardians of such persons as may be found to be of unsound mind, being vested in the probate courts by article 6, section 34, of the Constitution, "the manner of exercising this jurisdiction, as well as the whole procedure in regard to the persons and estates of insane persons is regulated and prescribed by chapter 116, Revised Statutes, 1879." This is now chapter 39, Revised Statutes 1899.

Our Supreme Court, in State ex rel. Grover v. Fowler, 108 Mo. 465, in passing on the question as to whether an appeal lay from the order of a probate court ap-

pointing an administrator of an estate, among other reasons assigned for denying the appeal, held that there was no provision for the appointment of a temporary administrator to act pending an appeal in a contest as to who should be administrator. "Hence," said the court, "the administration of an estate would be in abeyance during an appeal from an order appointing an administrator, which fact might be disastrous to the estate," Citing and quoting from this case, this court, in Looney v. Browning, 112 Mo. App. 19ₒ, speaking through Judge GOODE, said: "We can think of no reason why that decision is not an authority for holding an appeal will not lie from an order appointing a curator of a minor's estate. We find no provision in the statutes by which the probate court would be authorized to name a curator to act pending the final decision of such an appeal. And, of course, if there is a necessity for a curator, the estate might suffer greatly while waiting for a final decision."

This court, in Flick v. Schenk, not yet officially reported, but to be found in 117 S. W. 93, held that an order refusing to appoint a certain person administrator is not appealable, because not within the statute, but holding this was in conflict with the decision of the Kansas City Court of Appeals in Burge v. Burge, 94 Mo. App. 15, certified the case to the Supreme Court where, as reported 212 Mo. 275, the Supreme Court held with this court, that such an order was not appealable, following Grover v. Fowler, 108 Mo. 465, and citing approvingly State ex rel. Mitchell v. Guinotte, 113 Mo. App. 399; State ex rel. Pinger v. Reynolds, 121 Mo. App. 699, as holding that in granting letters of administration, etc., the probate court could be controlled by mandamus and not by appeal—the Supreme Court disapproving the reasoning in the Pinger Case, however, in which it was held that any appeal would also lie. Says Judge GANTT—referring to Grover v. Fowler, in the Flick Case, "As pointed out in that case, the

remedy by appeal is allowed in many of the States of the Union and by the English statute, but those statutes make provision for carrying on the administration pending the appeal by appointment of an administrator pending the appeal, whereas our statutes make no provision for such an appointment in case of an appeal by a claimant who has been denied the right by the probate court, and to tie up the administration of an estate while such a contest was being carried on would be disastrous to many estates."

It will be noticed that the reasoning in the decisions is along the line of working out the general intent and spirit of the statutes themselves, not interpreting literally but to accomplish the object thought to have been had in view. While the maxim *"Qui haeret in litera, haeret in cortice,"* is peculiarly applicable to the interpretation of contracts, it is not without force when applied to the interpretation of laws and its spirit has been followed by our courts with reference to statutes, with very great frequency. It must be borne in mind that in considering cases under the statute relating to administrators and curators, the fifteenth subdivision of section 278, Revised Statutes 1899, while granting a sweeping right of appeal in all cases other than those enumerated in the fourteenth subdivision preceding it, expressly confines that right of appeal "in other cases where there shall be a final decision of any matter arising under the provisions of this chapter." So too, in the chapter concerning guardians and wards, chapter 34, appeals are expressly allowed by section 3535, from final judgments "in like manner and with the same effect as appeals are allowed in cases of administration of estates of deceased persons." As before remarked, chapter 39, which relates to insane persons, not only appears to be complete in itself, but as held in the case of Cox v. Osage County, supra, is the exclusive legislation concerning the ascertainment and adjudication of insanity and the management of

the estates of persons declared to be of unsound mind. No provision is found in that chapter which by any construction can be held to apply to the consequences to follow an appeal from an adjudication on the issue of sanity. Whether pending an appeal the party informed of is to go at large, or be put in ward, what is to be done with his estate, what will be the effect on the guardian, if one is appointed, even what mode of trial in the circuit court, are all matters of vast importance, but on every one of which this chapter is silent, nor are there any provisions in any of our general statutes meeting them.

It is not to be held, for a moment, that failure to meet and provide for these matters, has, in all the years of our existence, both as Territory and State, escaped notice by our lawmakers, if it was in contemplation by them that an appeal should lie. Many cases have been decided by our courts in which the absence of any such provision has been noticed. It is incredible that our Legislature, in the body of which a large number of lawyers, many of great learning and eminence, have been conspicuous, should have failed to notice that no direct provision is made for an appeal. We must assume that they, knowing this, did not consider it wise to change the law.

We are, therefore, compelled to the conclusion that the provisions contained in section 1674, concerning appeals from probate courts, cannot be held as applicable to appeals in cases arising under section 3650, Revised Statutes 1899. We observe here that we are considering appeals arising under section 3650, and under sections 3651, 3652, 3653 and 3654 alone, proceedings directly connected with the adjudication of soundness or unsoundness of mind. We are not discussing or deciding any matters of the administration of the estate of the party adjudged insane. There is, however, another section of this chapter 39, the consideration of which lends some force and support to our conclus-

ion. That is section 3657, which is as follows: "The court may, if just cause appear, at any time during the term in which an inquisition is had, set the same aside, and cause a new jury to be impanelled to inquire into the facts; but when two juries concur in any case, the verdict shall not be set aside." It would seem from this, first, even granting a right of appeal from a verdict, can that right exist except from a second verdict —a second concurring verdict? second, is this not tantamount to a denial of a right of appeal from such verdict? This prohibition of more than two trials on concurring verdicts would seem to be as binding on this court and on the circuit court as on the probate court.

While it is true that in the case at bar no order of confinement is before us and no evidence or suggestion that the appellant is so unfortunate as to render her presence unsafe to the community and herself, our statute makes no distinction between irresponsible persons, persons of unsound mind or idiots and raving maniacs. It is provided in section 3702, of our Revised Statutes, that "for the purposes of this chapter, wherever the words 'person of unsound mind,' or 'insane person' occur therein, said words shall be construed to mean either an idiot, or a lunatic, or a person of unsound mind and incapable of managing his own affairs, as the case may be, upon proof as aforesaid." So that if an appeal lies in the case of a helpless and harmless idiot, it also lies in the case of a raving maniac.

While this case must be determined on the construction of our own laws, it is not uninstructive to notice how far statutes nearly identical and under a system of laws practically such as ours, have been construed by the courts of our sister states.

The general rule is stated in volume 1, Ency. Pl. and Pr., p. 1206, par. 19 (1), to be that in the absence of statutory authorization it is believed that no appeal from an adjudication in lunacy proceedings will be al-

lowed. Cases referred to sustain the text. Thus the question of the right of appeal from an adjudication of insanity came up before the Supreme Court of the State of Illinois, and the decision of the court is reported in People ex rel. v. Gilbert, County Judge, 115 Ill. 59. It is there decided that no appeal will lie from a finding and order of the county court in a proceeding to inquire into the alleged insanity of a person had under the laws of that state. It is to be noted that in Illinois, as in our state, there was a general provision outside of that relating to the law concerning procedure to determine soundness of mind of parties, granting a right of appeal from the final orders, judgments and decrees of the county courts to the circuit courts "in all matters," with some exceptions not necessary to notice, and further providing that upon such appeal the case shall be tried *de novo*. The Supreme Court of Illinois says as to this: "Broad as is the language here used, we are not of the opinion that it embraces the matter of this proceeding in question. An appeal is not compatible with the nature of the proceeding. It respects an unfortunate class of persons who, for want of reason, are unable to take care of themselves, and where the State interposes for their protection and care. . . . The taking an appeal would suspend the proceeding and leave the insane person at large until the appeal, and, perhaps further successive appeals, could be decided, while there might be necessity for the person's own safety and benefit, as well as the safety of others, that he should be immediately placed in the insane asylum for confinement, and to receive medical treatment there. . . . An appeal would frustrate the object of the proceeding,—the immediate commitment of a person deemed to be insane, to an institution for the insane for safe keeping and treatment. . . . It is true, that notwithstanding the contrary finding of the jury, the alleged insane person might be sane, and the ill-consequences supposed

might not result from the allowance of an appeal. But if the appeal lies, it lies in all cases equally, whether the person be a raving maniac, mildly affected with insanity, or be in fact sane. There can be no distinction made. The finding of the jury and the order of the court, at least, must be taken as presumptive evidence that the person alleged to be insane is insane, and that his case renders proper his immediate commitment to the State hospital for the insane, and that the delay of appeal might be fraught with injurious consequences." In Snyder v. Snyder, 142 Ill. 60, that court, however, held that under the laws of Illinois, a right of appeal was granted, the law providing for trial anew in the circuit court on the question of sanity.

The same question arose in Michigan, and was decided in Sparrow v. Ingham, Circuit Judge, 109 Mich. 272. The Supreme Court of Michigan there held that no provision being made for an appeal from an order of the probate court committing a person to an insane asylum, an appeal cannot be taken under a general statute authorizing appeals from orders of the probate court "in all cases not otherwise provided for." In the Sparrow case the appellant was, as in the case at bar, a woman. In Michigan, as in our State, the legislation concerning lunatics was in one chapter, making no provision for appeal, while this general provision for appeal was found in another and distinct chapter, just as in our own State. The Michigan statute has a provision in it also common to our own statute. Thus, our statute provides (section 3689, R. S. 1899, a section in this same chapter 39), that when any person has been, on inquiry, found insane, an application may be filed by any person in the probate court, verifying the application by affidavit, that the person has recovered and been restored to his right mind, whereupon the court is authorized to open up the case anew. Speaking of a similar provision in its own statute, the Supreme Court of the State of Michigan, in the Spar-

row case, refers to it as a humane provision of the statute by which the probate court can determine whether the person has been healed. Says the Supreme Court, referring to this, "If the court, upon the hearing, adjudges that his sanity is restored, may his relatives or friends take an appeal to the circuit court? Such a course would be cruel, and, we may safely assert, was never intended by the legislature." The court argues from this, that if an appeal can be taken from an order restoring a party to his citizenship, so can one be taken from an order declaring him insane, and that when the argument of harshness is invoked it applies as much to one case as to the other. In support of the proposition that no sound reason exists for an appeal, the Supreme Court of Michigan quotes approvingly from the case of People v. Gilbert, 115 Ill. 59, heretofore cited by us.

In the case of Studabaker et al. v. Markley, 7 Ind. App. 268, the appellate court of the State of Indiana held that in a case of a judgment which has been rendered in favor of a party charged with lunacy, and the judge, with the aid of the jury, has reached a conclusion in favor of sanity, the proceeding is at an end on its merits and no appeal therefrom is contemplated by the statute nor can be allowed. It appears by this case as reported that the proceeding of *inquirendo de lunatico* in Indiana is conducted on the equity side of the court. The judgment of sanity or insanity is pronounced, however, as in our State, before a court and a jury. The issue joined was tried by a jury, impanelled under the direction of the court, and a verdict was rendered in favor of the party proceeded against. Discussing the question, on the statute peculiar to Indiana, the court indulged in a line of argument practically similar to that followed by the Supreme Courts of Illinois and Michigan and reached the same conclusion reached by the courts of those States.

The Supreme Court of North Carolina, in the case

of Willis v. Lewis, 5 Ired. L. 14, and again in Ray v. Ray, 11 Ired. L. 357, held that under the law of that State and the proceeding governing an *inquirendo de lunatico,* there is no appeal from an order of the county court, which had jurisdiction in such matters, from an adjudication of lunacy. Discussing a provision of their statute very much like section 1674 of our statutes, and of the statutes governing proceedings concerning lunacy (provisions very similar to our own) the court disposes of the general provision as inapplicable to the cases of proceedings under the law concerning adjudication of lunacy, on the ground that the act granting appeals from the county to the superior courts evidently refers to cases of suits or actions in court where there are adverse claims. It holds that the *inquirendo de lunatico* is not such a case. The reason suggested by the Supreme Court of North Carolina against applying the general law concerning appeals to the statute concerning inquisitions of lunacy seems to us sound and sensible and applicable to the question before us, under section 1674, of our statutes—that is, this section is to be held applicable to adversary suits and actions, not to special proceedings such as is this inquisition.

The Court of Appeals of Texas, in the case of Darnell v. State, 24 Tex. App. 5, discussing the effect of a judgment finding a person insane, held that it was clearly not within the intention of the statute that an appeal should lie from a judgment under proceedings instituted for the purpose of passing on the sanity of a party complained of.

In Wilson v. State, 66 Iowa 487, the Supreme Court of Iowa, passing on a provision of the statute providing for a rehearing of a question of sanity, when the issue was made as to the recovery of one theretofore declared insane, held that there was no appeal from a finding on such rehearing. The statute, says

140 App.—36

the Supreme Court of Iowa, authorizing a rehearing makes no provision for an appeal from it; an appeal can be taken only in such cases as are specifically provided by statute.

The importance of this question is the justification for the somewhat lengthy consideration we have given to it, involving as it does the right of personal liberty and of the pursuit of happiness, in which latter is embraced the right of a man to the enjoyment of the fruits of his own labors.  The very life of the citizen and all that renders life enjoyable is generally involved in these cases.  Hence we have given this most serious consideration.  The conclusion we have reached is that the general language employed in section 1674 has no application to the statute concerning persons thought to be of unsound mind, lunatics, and as chapter 39 deals with that subject alone and is obviously intended to cover all phases of it and grants no right of appeal on the finding and judgment under sections 3650-3654, and as we can conceive of very great difficulty growing out of the case if an appeal were allowable, we have reached the conclusion that the action of the circuit court in this case in dismissing the appeal from the judgment of the probate court was correct.  While our statute provides for appeals from the probate court in cases not prohibited by law, it is a wide latitude of construction that embraces within the provisions of that section the complete system established under chapter 39 relating to insane persons.  Against the argument that a man may be improperly adjudged insane, it is to be said that if the proceedings are not regular, they can be reached by the writ of *certiorari;* if he has been committed and restored to his right mind, the statute affords a new hearing; if he is wrongly convicted and is held unlawfully, and it can be shown in spite of the judgment of conviction that he is a sane man, we know of no reason, although not deciding that in this case, why he could not be released under and

by virtue of the writ of *habeas corpus*.  If jurisdiction
is attempted to be exercised over him by a court other
than that of his domicile, that can be reached.  [State
ex rel. v. Murdeman, 129 Mo. App. 263.]  The very sec-
tion invoked, section 1674, by the concluding clause of
the fourth subdivision, vests plenary powers in the cir-
cuit courts over idiots, lunatics and persons of un-
sound mind—independent of any action had in the pro-
bate courts; not confining the exercise of that power
to an appeal, but making it as broad as the judicial
power of the State itself under the Constitution.

For the reason given herein and on an examination
of the authorities which we have gone into, we have all
reached the conclusion that the judgment of the circuit
court dismissing the appeal should be, and it is accord-
ingly, affirmed.  All concur.