STATE OF IOWA ex rel. E. C. McPHERSON, Appellee, v. HENRY A. RAKEY, Appellant.

No. 46703.

OCTOBER 16, 1945.

J. F. Hudson and Frank W. Oertel, both of Keokuk, for appellant.

John M. Rankin, Attorney General, Charles H. Scholz, Assistant Attorney General, and John F. Burrows, County Attorney, for appellee.

GARFIELD, J.—After the appeal was taken plaintiff filed a motion to dismiss it on the ground that in this form of proceeding no right of appeal to this court is granted by any statute or rule of this court. We held that plaintiff was not entitled to have its motion considered because it was not served within the time required by Rule 348(a), Rules of Civil Procedure. See State ex rel. McPherson v. Rakey, 236 Iowa 332, 18 N. W. 2d 529.

██ In brief and argument plaintiff renews its contention that no appeal lies in this form of action. Since this is a question that goes to our jurisdiction to entertain the appeal it is our duty to pass upon it now, notwithstanding the disposition made of plaintiff's motion to dismiss. Crowell v. Home Mut. Ins. Co., 233 Iowa 531, 10 N. W. 2d 69; Eby v. Phipps, 225 Iowa 1328, 283 N. W. 423, and cases cited; Barber v. Shattuck, 207 Iowa 842, 223 N. W. 864; 4 C. J. S. 1978, 1979, section 1368.

██ We think this appeal should be entertained. The right of appeal exists by virtue of statute. Wissenburg v. Bradley, 209 Iowa 813, 821, 229 N. W. 205, 67 A. L. R. 1075, and cases cited; 4 C. J. S. 61, section 1; 2 Am. Jur. 847, section 6. Rule 331(a), Rules of Civil Procedure, with the force and effect of statute, provides:

"All final judgments and decisions of courts of record * * * may be appealed to the Supreme Court, except as provided in this Rule and in Rule 333."

The stated exceptions clearly have no application here. Unquestionably this appeal is from a final judgment and decision of a court of record. It falls squarely within the language of Rule 331(a). To say that no appeal lies here is to assert that Rule 331(a) does not mean what it plainly states.

It may be claimed that Rule 331(a) allows only such appeals as might be taken under sections 12822, 12823, Code, 1939, prior to the adoption of the Rule. Without in any way holding that the Rule is so limited, we may observe that under section 12823(2) an appeal could be taken from: "A final order made in [a] special actions affecting a substantial right therein * * * ." The adjudication here is such an order. That this is a special action is plain from Code sections 10938, 10939. See, as bearing on this question, State ex rel. Sundberg v. District Court of Hennepin County, 185 Minn. 396, 241 N. W. 39.

██ We have held, and properly so, that where a special statute excludes the right of appeal in certain proceedings it will control over a general statute authorizing appeals. State ex rel. Rankin v. Woodbury County, 231 Iowa 356, 1 N. W. 2d

223; State ex rel. Fletcher v. Webster County, 209 Iowa 143, 227 N. W. 595; Lampson v. Platt, 1 (Clarke) Iowa 556. But there is no provision in chapter 171 which excludes the right of appeal, either expressly or by necessary implication, in such a proceeding as this. We do not overlook sections 3438–3443, which provide a remedy for securing a discharge from an institution. We will discuss these sections later. We are cited to no case and find none where we have ever refused to entertain an appeal from a final order in a special action unless a special statute plainly excludes the right of appeal.

Section 3422 in chapter 171 provides: "The hearing on the allegations of the petition shall be as in equitable proceedings." This provision is inconsistent with the claim that no appeal lies from a decision made following such a trial. The legislature had some purpose in enacting 3422. It is reasonable to conclude that trial as in equity was required so there might be trial de novo upon appeal.

In Wilson v. Shorick, 21 Iowa 332, it was held that an appeal to the district court would lie, under a general statute, from an order of the county court appointing a guardian based on a finding of unsoundness of mind. The general statute was section 267 of the Revision of 1860 which provided that an appeal is allowed, except when otherwise stated, "from all decrees and decisions of the county court on the merits of any matter affecting the rights or interests of individuals as distinguished from the public * * * ."

There was no special provision for appeal in Wilson v. Shorick. It was claimed there was no right of appeal and that the petitioner's remedy was to secure the termination of the guardianship under section 1457 of the Revision, somewhat similar to a petition for discharge from commitment to an institution under sections 3438–3443 of the present chapter 171. (The old statute also preserved the right of habeas corpus— section 1441, Revision of 1860.) But this court held the right of appeal existed under the general statute. This is from the opinion, at pages 334, 335 of 21 Iowa:

"* * * but it is claimed that the remedy of the petitioner is by another proceeding. It is provided, by Revision, section

880

1457, that whenever the probate judge (County Court) shall be satisfied that a lunatic is restored to reason, or that letters of guardianship have been improperly issued under this act, he shall make an entry upon the records of his court that said guardianship terminate, and the guardianship shall thereupon cease, and the accounts of the guardian shall be settled by the court.

"It is probably true that the plaintiff in this first proceeding might obtain as full and complete remedy under the provisions of this section, as he can by an appeal; but this fact does not by any means deprive him of his right to an appeal. In other words, this section does not expressly, nor by necessary implication, take away the right of appeal, which is clearly given by the general law as to appeals, before cited, and that right therefore remains to him. [Citing cases.]"

In George v. Parker, 16 Iowa 530, it was held that a guardian of minors had the right of appeal to the district court under section 267 of the Revision, above referred to, from an order of the county court removing him as guardian. In Porter v. Butterfield, 116 Iowa 725, 728, 89 N. W. 199, we held that an appeal would lie to this court, under the general statute, from a determination by the district court of the sufficiency of statements of consent to the sale of intoxicating liquors. The statute involved was section 4101, Code, 1897, identical with section 12823(2), Code, 1939, which authorized an appeal from "A final order made in special actions affecting a substantial right therein * * * ."

Proceedings under chapter 171 are somewhat analogous to those under chapter 177 for the commitment of insane persons by the commission of insanity. Section 3560 in chapter 177 provides for an appeal to the district court from the finding of the commission but the chapter contains no provision for appeal from the district court to this court. Chapter 177 also provides a special remedy for the discharge from confinement of any person previously committed (sections 3570–3576). This special remedy is analogous to the remedy provided by sections 3438–3443, chapter 171, for the discharge from confinement of a person committed to an institution for feeble-minded under

chapter 171. Section 3577 in chapter 177 also specially preserves the remedy of habeas corpus, just as section 3438 in chapter 171 does. This court has entertained appeals from findings of insanity by the district court under chapter 177. In re Harmsen, Iowa, 167 N. W. 618; In re Insanity of Fleming, 196 Iowa 639, 195 N. W. 242. See, also, In re Insanity of Brewer, 224 Iowa 773, 276 N. W. 766. So far as our reports show, our right to entertain such appeals under chapter 177 has never been questioned.

An adoption proceeding is another special action in which no appeal is authorized by special statute. We have uniformly entertained appeals in adoption matters. In re Adoption of Alley, 234 Iowa 931, 937, 14 N. W. 2d 742, 745, 746, and cases there cited, where we said: ''So far as our reports show, our right to do so has never before been questioned.'' Plaintiff in effect seeks to commit the court to the views expressed in the dissenting opinion in the Alley case.

Barnes v. Paanakker, 72 App. D. C. 39, 111 F. 2d 193, 194, 195 (Vinson, J.), holds that an appeal lies under a general statute similar to our Rule 331(a) from a denial of a petition to adopt minors [D. C. Code, 1940, T. 17, section 101]. The court says:

''Although there is some slight sanction for this contention [citing Meyers v. Meyers, 32 Ill. App. 189, and In re Hughes, 88 Okla. 257, 213 P. 79], in many, if not most, states appellate jurisdiction is exercised over adoption proceedings through appeal [citing several cases], writ of error, or certiorari. Moreover, we are of the opinion that the more persuasive authority takes the view that an appeal will lie, under a general appeals statute, from a final order or decree of a lower court entered in adoption proceedings. [Citing cases.]''

Meyers v. Meyers, 32 Ill. App. 189, referred to in the foregoing excerpt, was, as stated in the Barnes case, decided on the authority of People v. Gilbert, 115 Ill. 59, 3 N. E. 744, to which we later refer. In re Hughes, to which the Barnes opinion refers, is cited in the dissent in In re Adoption of Alley, supra. The Barnes case says: ''The status of In re Hughes, supra, as an authority on this question is, therefore, somewhat dubious.''

We have also entertained appeals from final orders of the juvenile court, in the absence of any special statute authorizing such appeals. State ex rel. Roberts v. Johnson, 196 Iowa 300, 194 N. W. 202. See, also, In re East Minors, 143 Iowa 370, 122 N. W. 153.

To refuse to entertain this appeal would be a reversal of the position we have taken in appeals from findings of insanity by the district court under chapter 177, from decrees of adoption, and from final orders of the juvenile court. We are not disposed to reverse the position this court has taken throughout its history of nearly a hundred years; namely, we will entertain an appeal from a final judgment in a special action unless the special statute plainly excludes the right of appeal. We think this is a wholesome and salutary rule.

It is unimportant that our opinions may not disclose that our right to entertain such an appeal as this in a special action has been challenged. Under the authorities cited at the beginning of this opinion, and many more which might be cited, it is not only our right but our duty to refuse, on our own motion, to entertain an appeal that is not authorized by statute. Our Reports disclose that we have time and again, of our own volition, dismissed appeals not authorized by statute.

Plaintiff argues that the right of appeal *from an adjudication of feeble-mindedness* under chapter 171 is negatived by the provision of Code section 3438: "No person committed hereunder shall be discharged from the institution except as herein provided * * * ." Sections 3439–3443 then provide for a petition for discharge of one who for more than six months *has been committed to an institution* under chapter 171 and for hearing and disposition of the petition. It would seem that section 3438 contemplates a legal commitment under an order found to be valid upon appeal, if an appeal is taken.

In any event, section 3438 and the following sections, 3439–3443, have to do merely with the *discharge from confinement* of a feeble-minded person who has been committed to a state or private institution for more than six months. Upon an adjudication of feeble-mindedness under chapter 171 there may be no commitment to any institution but merely the ap-

pointment of a guardian. See section 3428. It cannot be claimed that section 3438 inferentially or otherwise negatives the right of appeal of one who has been adjudicated to be feeble-minded under chapter 171 but not committed to an institution. Sections 3439–3443 afford no remedy whatever to such a person. Nor can it be argued that 3438 negatives the right of appeal by an unsuccessful plaintiff in an action under chapter 171.

As heretofore stated, the limited remedy provided by sections 3438–3443 is analogous to the remedy provided by sections 3570–3576 in chapter 177, which have never been held to negative the right of appeal from judgments under chapter 177. Sections 3438–3443 are also analogous to sections 12623–12627 in chapter 541, which provide a remedy for terminating a guardianship after six months. But 12623–12627 have never been held to negative the right of appeal from an adjudication of incompetency and an order appointing a guardian under chapter 541. We have entertained appeals from such adjudications under chapter 541. Miller v. Paulson, 185 Iowa 218, 169 N. W. 203; Claussen v. Claussen, 216 Iowa 269, 249 N. W. 397.

Plaintiff relies upon the second sentence of this quotation from 4 C. J. S. 92, 93, section 22c:

"General provisions governing appeal do not ordinarily embrace proceedings by tribunals or officers under special acts not expressly authorizing appeal.

"As a general rule, where a special statute creates a new remedy, not according to the course of the common law, to meet a new situation, and an appeal is not given by the special law creating the procedure, no appeal lies, and general provisions relating to appeals are ordinarily inapplicable. * * * Nevertheless, an intention to deny the right of appeal, because of a failure or omission to provide therefor in a special act, will not lightly be assumed or inferred."

The statement relied upon is not applicable here. Feeble-mindedness is certainly not "a new situation." We have carefully read the cases cited in support of the foregoing text. There is nothing in them which conflicts with the views herein expressed. Phelps v. Board of Appeals, 325 Ill. 625, 156 N. E. 826, is illustrative of the cases cited. It involves an attempt

to appeal from a decision originally made by an administrative officer in issuing a building permit. No right of appeal was given even by the general statute.

Substantially the same thought expressed in the foregoing quotation from C. J. S. is thus stated in 2 Am. Jur. 858, section 19:

"No appeal lies from the judgments of special statutory tribunals whose proceedings are not according to the course of the common law unless the right is given by statute."

Courts of record when conducting trials "as in equitable proceedings" in one of numerous special actions are not "special statutory tribunals."

People ex rel. Fullerton v. Gilbert (1885), 115 Ill. 59, 3 N. E. 744, cited by plaintiff, holds that in Illinois no appeal would lie to the circuit court, under a general statute, from a finding of insanity by the county court. The case is to be distinguished on the ground that there a related statute provided for an appeal, while the statute under consideration contained no such provision. This appears from page 63 of 115 Ill., page 746 of 3 N. E.:

"Chapter 86 * * * which provides for a similar inquiry by a jury, to ascertain whether a person is an idiot, lunatic, or distracted, in order for the appointment of a conservator to take charge of and manage his estate, provides for an appeal from the finding. The two acts are, to a certain extent, in pari materia, and giving an appeal under the one, and not under the other, tends to show the legislative intention that there should be no appeal in the latter case."

We have no such situation here. But the rule of People v. Gilbert was abrogated by statute in Illinois and an appeal is now allowed from a finding of insanity. In re Cash, 1943, 383 Ill. 409, 50 N. E. 2d 487, 489. And see In re Petition of Ekendahl v. Topol, 1944, 321 Ill. App. 457, 53 N. E. 2d 302, 304, where it is held, in accordance with the practice that has prevailed in Iowa, that an appeal would lie, under a general statute, from a decree in an adoption matter, where the adoption

statutes neither granted nor expressly forbade the right of appeal.

Studabaker v. Markley, 7 Ind. App. 368, 371, 34 N. E. 606, 607, cited by plaintiff, holds merely that upon the dismissal of a petition to have another adjudged of unsound mind, *the petitioner* has no such interest as entitles him to appeal. However, the court says:

"From an adjudication which is adverse to, or deprives the person charged of any substantial rights, he may appeal * * * ."

Harmon v. Harmon, 141 Tenn. 64, 66, 206 S. W. 333, is a like holding, but there the court says:

"It is well settled that a defendant, against whom there has been a judgment of lunacy in an inquisition held for that purpose, is entitled to appeal. [Citing cases.]"

Our conclusion that an appeal lies here also finds support in Shafer v. Shafer, 181 Ind. 244, 104 N. E. 507, 510; Appeal of Kane, 12 Mont. 197, 29 P. 424; Ald's Estate v. Appling, 89 Kan. 340, 131 P. 569; Wadleigh v. State, 108 Kan. 682, 197 P. 217; In re Bristor's Estate, 115 Md. 614, 81 A. 25, 27.

On the merits, defendant first challenges the sufficiency of the evidence to support the judgment. Since the trial below was as in equity, the parties are entitled to trial de novo here. Nevertheless, as we have repeatedly said in equity cases, we are warranted in giving considerable weight to the decision of the trial court which observed the parties and witnesses. After doing so, we reach the same conclusion as did the trial court.

The relator is chief of police of Keokuk. Defendant was twenty-one at the time of trial. He completed the third grade in the Keokuk public schools when thirteen years old. He then dropped out of school at the suggestion of the school authorities because he was making no progress. Defendant then helped his mother for two or three years. When about fifteen, at the suggestion of the social-welfare agency, defendant was sent to the Glenwood state school for feeble-minded as a voluntary inmate. He remained there for nearly five years when, at the request of his mother, he was returned to the mother's home in

Keokuk. Defendant then hauled garbage with a horse and wagon for about six months. During the following period of about six months, down to the time of trial, defendant was a common laborer in a foundry.

Pursuant to Code section 3424, the court appointed two physicians to examine defendant. Their report, pursuant to section 3425, states in part:

"He did not comprehend readily the questions that were put to him. * * * He is able to write his own name but could not write the name of his stepfather. He was unable to read ordinary ads on the calendars in the room. When reading material was put in front of him, he was unable to read such words as *that, then, from,* etc. * * * It is our impression that the above is feeble-minded and is not responsible for his behavior. It is our recommendation that the said Henry A. Rakey be placed under the control of an institution for feeble-minded persons for his own welfare and the welfare of the community."

Upon the trial there was no expert testimony inconsistent with the report of the examining physicians. Defendant as a witness himself said:

"I can read some, but I can't read much. I can write my name, write some letters, and some words, and that is about all. My figuring, I can do that pretty good, and adding."

There is ample evidence that defendant is a sex pervert, molested small children, committed sodomy upon a seven-year-old boy and probably upon a boy of thirteen, and sought to induce at least one other child to submit to sodomy.

Section 3411 defines a feeble-minded person in this way:

" * * * any person afflicted with mental defectiveness from birth or from an early age, so pronounced that he is incapable of controlling himself and his affairs and requires supervision, control, and care for his own welfare, or for the welfare of others, or for the welfare of the community, and who is not classifiable as an 'insane person' within the meaning of the provisions of the chapters of this title relating to the insane."

We think there is sufficient evidence that defendant falls squarely within the foregoing definition.

Defendant contends the procedure prescribed by chapter 171 was not followed. Section 3414 provides that the petition shall state, along with other matters, whether the alleged feeble-minded "person has been examined by a qualified physician with a view of determining his mental condition." The petition here states that defendant was so examined by Dr. Lacey, superintendent of the Glenwood state school, the last examination having been made about August 14, 1943. Defendant contends proof of this allegation is a requisite to an adjudication of feeble-mindedness and that such proof is lacking. This contention was not made in the court below, although defendant was represented by attorneys, and for this reason we would be justified in disregarding it.

However, we are disposed to comment on this contention. We are not prepared to hold that proof of this allegation was required. Had the petition alleged that defendant had not "been examined by a qualified physician," etc., the requirement of section 3414 would have been met. In such event, clearly proof that there had been such an examination would have been unnecessary. But we think there was sufficient proof of this allegation of the petition. A letter from Dr. Lacey, dated August 6, 1943, was put in evidence without objection. While the letter does not expressly state that Dr. Lacey had examined defendant, it plainly implies as much and indicates that the doctor was quite familiar with defendant's mental condition. We are clear no reversible error is shown here.

Section 3425 as amended by chapter 128, Acts of the Fiftieth General Assembly, provides that the examining physicians appointed by the court shall report "to the court the facts attending the mental condition of said person and * * * shall also report * * * sworn answers to such questions as may be required by the court." Defendant contends there was a lack of compliance with this statute. This contention was likewise not raised in the trial court and we would therefore be justified in disregarding it. But we think the complaint is without merit. The report of the examining physicians contains

sufficient facts, to some of which we have previously referred, regarding defendant's mental condition and these facts support the conclusion of feeble-mindedness. The record does not show that the trial court required the examining physicians to submit any questions to be answered under oath. Therefore no "sworn answers to such questions" could be reported. Section 3425 as amended contemplates that the trial court has discretion whether or not to require the examining physicians to put certain questions to be answered under oath. We may assume here that the court concluded no such questions were necessary. No abuse of discretion appears.

Finally, it is contended that the commitment of defendant to the Glenwood institution is too severe and that the ends of justice would have been better served if the court had appointed a guardian of the person as authorized by section 3428. Upon an adjudication of feeble-mindedness, at least some discretion must be given the trial court in determining under 3428 whether a guardian of the person should be appointed or whether the person should be committed to a state institution or an approved private institution. It does not appear that such discretion was abused here. If after six months' commitment defendant should cease to be feeble-minded or "for any other cause" should be discharged, the remedy provided by sections 3438–3443 is, of course, open to him.—Affirmed.

MILLER, C. J., and OLIVER, BLISS, WENNERSTRUM, SMITH, MANTZ, and MULRONEY, JJ., concur.

HALE, J., not sitting.