Eddy *v.* The People, *ex rel.* Eddy et al.

IRA B. EDDY, Plaintiff in Error, *v.* THE PEOPLE, *ex relatione* SARAH EDDY et al., Defendants in Error.

ERROR TO COOK COUNTY COURT OF COMMON PLEAS.

In a proceeding under the statute to procure the appointment of a conservator to a lunatic, the lunatic must have reasonable notice, or the inquisition will be set aside.

ON the eighth day of February, 1853, Sarah Eddy, Charles V. Dyer, and R. W. Lyon, filed, in the Cook county Court of Common Pleas, M. SKINNER presiding, an application, stating that Ira B. Eddy had estate real and personal, and requesting that a jury might be ordered to ascertain whether said Eddy was a lunatic or distracted person. A jury was ordered, which found said Eddy to be an insane person.

The court having heard the evidence, determined that the estate of Eddy was of the value of $40,000, and appointed Devotion C. Eddy conservator of the estate, and ordered that a bond should be given in the sum of $80,000; which was done.

Afterwards, Ira B. Eddy, by his counsel, filed his petition for a rehearing, which was denied, to which exception was taken. Ira B. Eddy then sued out this writ of error.

E. W. TRACY, for plaintiff in error.

G. GOODRICH, for defendants in error.

CATON, J. We shall confine our discussion in this case to the question of notice. The statute provides that whenever a lunatic has any estate, the judge of the circuit court of the county in which such lunatic lives, shall, on the application of any creditor or relative of the lunatic, order a jury to be summoned to inquire whether such person be lunatic, and if the jury shall so find, the judge shall appoint a conservator, &c. The statute is silent upon the subject of notice, and the question is, whether it is regular to proceed without notice to the supposed lunatic. We are clearly of opinion that upon the general principles of law, the supposed lunatic is entitled to reasonable notice. If he be in fact a lunatic, the notice would be undoubtedly useless; but that is the very question to be tried,

and until a regular trial is had or inquest made, the presumption is in favor of his sanity. The consequences resulting from the determination are of the most momentous character to the lunatic, both personally and pecuniarily, and so long as it is possible that a sane person might, upon an *ex parte* examination, be found to be insane, every principle of justice and right requires that he should have notice and be allowed to make manifest his sanity, and to refute or explain the evidence tending to prove the reverse. The idea is too monstrous to be tolerated for a moment, that the legislature ever intended to establish a rule by which secret proceedings might be instituted against any member of the community, by any party who might be interested, to shut him up in a madhouse, by which he might be divested of his property and his liberty, without an opportunity of a struggle on his part. Should such a principle be sustained, the most sane man in the State is liable to be surprised at any moment, by finding himself bereft of his property, and on his way to a lunatic asylum. Such justice as this would be worthy of that dread tribunal the *holy vehme*, whose first notice to its victim was the execution of its sentence; but it cannot be tolerated where just and equal laws prevail and can be enforced. If the party be actually lunatic, the notice can do no harm; but if he be sane it is of the most momentous importance to him, and at any rate it must be his legal right. It is said in this case, that the supposed lunatic did have notice, and actually appeared by counsel and examined the witnesses, and that we should presume notice was given till the contrary is shown, upon the principle that we will presume that the court below proceeded regularly. If notice was given the record should show it affirmatively. How is it possible upon this writ of error for the plaintiff to show the negative, and prove that he had no notice? This case must be tried by the record, and neither party can introduce other evidence to contradict, explain, or enlarge it. The record should have shown the notice.

But this is not a case of first impression. The case of Chase *v.* Hathaway is analogous to this in every essential particular, and is precisely in point. The court there said, "there being no provision in the statute for notice to the party who is said to be incompetent, by reason of insanity, to manage his estate, it seems that the judge of probate did not think such notice essential to his proceedings. But we are of opinion that, notwithstanding the silence of the statute, no decree of a probate court so materially affecting the rights of property and the person, can be valid unless the party to be affected has had an

opportunity to be heard in his defence." See also 2 Barb. Ch.
·Pr. 229 *et seq.*

The inquisition and order of the common pleas must be
reversed.

*Order reversed.*