## THOMAS BALL

### *v.*

### PHILLIP F. W. PECK.

1. LEASE — *mere loose explanation and statements do not create.* Where a landlord says to the wife of his tenant holding over, that he did not wish him to leave the premises, and that he would not disturb the tenant until a lessee of the property, after the expiration of the former lease, should disturb the landlord, *held*, that this does not constitute a new lease to the tenant holding over.

2. FORCIBLE DETAINER — *notice to quit.* A notice to quit should be signed by the landlord or a properly authorized agent, to be binding on the tenant. To authorize a recovery in forcible detainer this must be proved. And the notice to quit must be proved by legitimate evidence. This cannot be done by producing a copy, with an affidavit of service. The witness serving it should be produced to prove the service.

3. Whether the original notice be left with the tenant, or only a true copy or a duplicate, the service must be proved by a witness. The statute has not authorized an individual to make a return of service.

4. The notice required by the third section of the act of 1865, relates to the notice terminating a lease, under the second section of that act. The seventh section of that act only dispenses with a notice of the termination of a lease, which fixes the time when it shall expire; it requires, on the contrary, that a notice be given when he elects to terminate it for a breach of covenants.

5. This section of the act of 1865, does not conflict with or repeal the first section of the forcible entry and detainer act of 1845, which requires a demand in writing to be made for possession before forcible detainer can be maintained. It leaves the demand to be made as required by the act of 1845.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. ERASTUS S. WILLIAMS, Judge, presiding.

Phillip F. W. Peck brought an action of forcible detainer against Thomas Ball, before a justice of the peace of Cook county, on the 8th day of June, 1865, to recover possession of a house in the city of Chicago. The complaint states, that Peck leased to Ball on the 1st day of May, 1864, for the term of one year; that the term had expired, and that Ball willfully held over after the determination of the time for which it was leased,

and after a demand for possession made in writing. A summons was issued, and a trial was had before the justice of the peace, resulting in a judgment in favor of Ball.

An appeal was prosecuted from this judgment to the Cook Circuit Court. At the September Term, 1865, the cause was tried by a jury, who found a verdict in favor of Peck. Defendant entered a motion for a new trial, which was overruled by the court, and a judgment was rendered on the verdict. He brings the case to this court by appeal and asks a reversal.

James Long testified in the court below, that he was Peck's agent; that he signed the lease to Ball as such agent; that before it expired, he offered to lease the premises to him for another year, but he on more than one occasion refused to lease the property; that witness then leased the premises to Chadwick; that he signed Peck's name to the lease by authority; that he leased to Chadwick in April; that defendant held over.

Plaintiff then offered in evidence the copy of a notice with affidavit of service attached. It was objected to on the grounds, that it was not signed by plaintiff, and because the notice offered was a copy, and also because no foundation had been laid for the introduction of a copy. The objection was overruled, the paper was read in evidence, and exceptions were duly taken.

Defendant called a witness who stated, that he was present at a conversation between Mrs. Ball and plaintiff, in which he said he had intended Ball to keep the property, and that he did not desire Chadwick for a tenant, and that Long should not have leased to him; but he would not disturb defendant unless Chadwick should disturb him. Defendant asked several instructions, the third of which the court refused to give; it is this:

"If the jury believe from the evidence, that the plaintiff, P. F. W. Peck, after the termination of the lease introduced in evidence, told the defendant, or any one acting for the defendant, that he did not want the defendant to leave the premises in question, and that he should not disturb defendant until Chadwick disturbed him, then the plaintiff cannot recover,

without proving that Chadwick had interfered with or disturbed him."

To the refusal of the court to give this instruction defendant excepted, and now urges a reversal on that ground.

Messrs. MONROE, McKINNON & TEWKSBERRY, for the plaintiff in error.

Messrs. HOYNE, HORTON & HOYNE, for the defendant in error.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

This was an action of forcible detainer for the recovery of the possession of a house and lot, brought before a justice of the peace, and removed to the Circuit Court, by appeal, and thence to this court. On the trial below it appeared in evidence, that plaintiff in error, on the 1st of May, 1864, leased of defendant in error the house and lot in controversy, for the term of one year. Plaintiff in error had for several years been his tenant. Before the expiration of the term, however, Long, the agent of defendant in error, leased the premises to one Chadwick, for the ensuing year.

On the 1st day of May, Long served a notice on plaintiff in error to quit the possession of the premises. His wife, after the suit was commenced, went to defendant in error and had an interview with him in reference to the property.

He, it seems, assured her, that he had never intended for plaintiff in error to leave the premises until it became necessary to remove the building for the purpose of erecting a new one; that Long had done wrong in renting the premises to Chadwick, as it was contrary to his wishes, and it was not his wish that Chadwick should have them; that he would not trouble plaintiff in error until Chadwick troubled him, for possession; that he wanted the keys turned over to himself and not to Chadwick, as there were other considerations he wanted settled before Chadwick got them.

He further stated, that plaintiff in error had been a good tenant, and he never felt inclined for him to leave, until he

intended building, and then the house would have to be moved
off, even if it sold for fifty dollars; that he expected Chadwick
would sue him for damages, and he thought the greatest
damage would be to let him have the property, as it was not
worth the rent he was to pay him for it. He further stated,
that he had previously told Mrs. Ball, that if the place was
rented for $800, he would be perfectly willing to give plaintiff
in error a lease for nothing, and he found he was right, for it
was rented for not over $750. "He also stated, that plaintiff
in error could have the place so long as Chadwick did not
trouble him; he did not wish for Chadwick to take the place;
he had read too much in the papers to have him for a tenant."
Plaintiff in error asked the court to instruct the jury, that if
they believed, that defendant in error told plaintiff in error,
that he did not wish him to leave the premises, and that he
would not disturb him, until Chadwick disturbed defendant in
error, then he could not recover until Chadwick had interfered
with or disturbed him. The court below refused to give the
instruction, which is urged as a ground of reversal.

The propriety of the refusal to give this instruction, depends
upon whether the conversation defendant in error had with
Mrs. Ball, could be construed into a lease. It seems no more
than his mere declaration as to what he had previously
intended, and regret that his agent had not rented the
property to plaintiff in error. He did not say, that plaintiff
in error could occupy it for any definite period, for any fixed
sum, nor were any terms named, only he could occupy it if
Chadwick did not disturb him; but he expected he would sue
him for damages. There was no consideration paid, even if it
could be construed into a contract. It, however, when taken
together, only seems to have been an explanation; and an
effort on the part of the defendant in error to justify himself
in what had been done, and not an intention on his part to
create a new term or to extend the old one. Again, he
directed her to return the keys of the house to him, which
clearly manifested an intention for plaintiff in error to lease,
and for Chadwick to go into possession. This conversation is

entirely too loose and indefinite, from which to infer a contract for any purpose, or a lease of the premises.

On the trial below, the written demand for possession was read in evidence, against the objections of plaintiff in error. It was objected specifically, that it was not proved that defendant in error had signed the original demand, or authorized it to be done; that the paper offered was only a copy, and that the proper foundation was not laid for the introduction of a copy. The statute has required, that a demand for possession shall be in writing, before the action is commenced. This demand being essential, it should be proved, to authorize a recovery, and in doing so, the rules of evidence must be observed. It is essential, that the demand should be shown to be genuine, either signed by the person entitled to possession, or some one authorized by him, or at least, recognized by him. Again, the service of the notice of the demand should be proved by legitimate testimony, and according to the rules of evidence. Was this done in the present case?

There is no evidence that defendant in error signed the notice, nor does it appear that Long, his agent, signed his name, nor is there any evidence, that either defendant in error or his agent ever saw the notice which was served. But the question arises, if this is proved to be a true copy, whether the subsequent acts of defendant in error did not amount to an adoption of this notice as his act, although not genuine. We are inclined to think it did, but such ratification could only bind or operate upon plaintiff in error, from the time it was ratified, and he had notice of the fact. He was not bound to regard an unauthorized notice. If the name of defendant in error was unauthorized when the service took place, it was not his act, and plaintiff in error was not bound to regard it. If unauthorized, there was not, when the copy was served, a demand for possession, and there is no evidence that this was recognized as genuine prior to the commencement of the suit, and in the absence of such proof the suit was unauthorized. No doubt the production of the notice on the trial, was a recog-

nition of its genuineness, but that was subsequent to the suing out of process.

Again, whether it be necessary to leave the original, or show the original to the occupant, and serve him with a copy, or whether the two papers are duplicates, each signed by the person making the demand, and one is served and the other retained, still the fact of service must be proved. And that is a fact which must be established in the usual mode of making proof, clearly, according to the rules of evidence. The witness making the service should be called. Officers, only, are authorized to make return of service of process, unless it be in a few cases where the law has authorized private individuals to make a sworn return; and there is no express provision of the law, authorizing a return to be made in this case, either by an officer or a private individual. It then follows, that the affidavit of service in this case was not legitimate proof of the service of the notice, which must be proved to entitle a party to recover in this form of action. The person who served the notice should have been called to prove the fact.

The third section of the act of 1865, obviously relates alone to the service of notice in the single case of terminating a lease for the non-performance of its conditions, as it authorizes the landlord to do in section two of that act. It does not apply to the mode of serving notice of the demand for possession in other cases.

It is insisted, however, that the seventh section of the act of 1865 (p. 109) dispenses with a demand of possession, before bringing forcible detainer. That section declares, that in all cases where a lease or contract exists between the landlord and tenant, where all of its covenants are fulfilled, the lease or contract shall be deemed sufficient notice of its termination for the time for which it was made, and no other notice is necessary. The obvious meaning of this provision is, that where, by the terms of the lease or contract under which the tenant has entered, a time is fixed for it to expire, the lease or contract shall be held to afford him all the notice the law requires; that his lease terminates at that time; that the landlord shall not

be required to give the tenant notice of the time when it expires. It would seem to imply, on the contrary, that where the covenants are not fulfilled, and the landlord elects to enter for a covenant broken, he should give notice, that he has elected to terminate the lease, and to re-enter; and was designed not to conflict with sections two and three of the act.

We do not understand that this provision in any way conflicts with, or repeals the provision of the first section of the forcible entry and detainer act of 1845, which requires a demand in writing to be made before commencing the action. A notice to terminate a tenancy from year to year, at will, or from month to month, requires timely notice before the end of the period, to be given, notifying the tenant that the landlord elects to terminate the tenancy, and the time when it will expire. But this is altogether different from the notice to quit, and the demand of possession required by the first section of the forcible entry and detainer law. And the seventh section only intended to dispense with notice, when the lease had expired by force of its own terms; that the term would end at the stipulated time, still leaving a demand in writing necessary for the possession before the suit could be brought.

For the errors indicated the judgment of the court below is reversed and the cause remanded.

*Judgment reversed.*