52　35
46a 318

JAMES M. WANZER *et al.*

*v.*

S. EDWARD BRIGHT.

1. ILLEGAL ARREST—*abuse of process—obtaining jurisdiction of the person by fraud.* No court will take jurisdiction of a party where it is obtained by fraud; nor is a defendant amenable to process unless he is in, or comes voluntarily within, the territorial jurisdiction of the court. Even a valid and lawful act can not be accomplished by such unlawful means as enticing a party by fraud to come within the jurisdiction of the court so as to subject him to its process.

2. And where a party has been fraudulently induced to come within the jurisdiction of a court so as to render him or his property amenable to its process, he may have his action therefor.

3. So where a person residing in another State was induced to come into this State by certain creditors residing here, by the latter falsely representing to him, through a telegraphic dispatch and a letter, under another

name, that the person whose name was so used desired to see him in Chicago, on a certain day, upon business not connected with the real object in view, which was to allure the party into this State for the purpose of arresting him under civil process, to compel the payment or securing of his debts, and when the party came within the jurisdiction of the courts of this State, in compliance with such request, he was arrested at the instance of the creditors, and imprisoned, it was *held,* that the creditors guilty of such fraudulent conduct and abuse of process, not only could not make them availing for the purpose intended, but were liable to an action at the suit of the party injured for the illegal arrest and imprisonment.

4. Nor would the fact that the false correspondence, by means of which the party was enticed within the jurisdiction of the court, was dictated by the attorney of the creditors in whose interest the fraud was perpetrated, at all exonerate those creditors from their liability to respond in damages, when they were previously consulted about it, and sanctioned the act, or at least afterwards approved of it, and sought to profit by it.

5. Same—*punitive damages recoverable.* Such a fraudulent and outrageous abuse of the process of the court should be severely punished, and exemplary damages should be given.

Appeal from the Circuit Court of Cook county; the Hon. Erastus S. Williams, Judge, presiding.

The opinion states the case.

Messrs. Hurd, Booth & Kreamer, for the appellants.

Mr. A. C. Story, for the appellee.

Mr. Justice Walker delivered the opinion of the Court:

This was an action of trespass on the case commenced by appellee in the Cook county circuit court, against appellants. Appellee claimed damages for an illegal arrest and imprisonment on process from the superior court of Chicago, at the suit of appellants. Also, for an illegal arrest at the suit of other parties, claimed to have been induced and procured by appellants.

It appears from the evidence in the case. that appellee resided in Elkhorn, in the State of Wisconsin, and was engaged

in the commission business, and in the sale of agricultural implements. That appellants were engaged in the same character of business in the city of Chicago. That appellants had furnished him with implements for sale on commission, and there was an unsettled account between them, and appellants claimed that appellee owed them $500 on their account.

Appellee claimed that he had invented an improvement in the construction of railroad car doors, for which he had obtained letters patent from the government. Appellants knew of this, and informed their attorneys of the fact; and they left their claim with them for collection, in February, 1867. On the 22d of April, 1867, an affidavit was prepared, signed and sworn to by Wanzer, and there was prepared, on the same day, and sent to appellee at his residence in Elkhorn, this dispatch:

" CHICAGO, April 22, 1867.

To S. E. BRIGHT:

Can you meet me at the Washington House on the twenty-sixth (26) inst. Answer. I want your patent car door.

J. M. MANNING."

Appellee answered, declining to come to Chicago, but asked further particulars, whereupon the following letter was sent him:

" CHICAGO, May 5, 1867.

S. E. BRIGHT, Elkhorn, Wisconsin:

SIR—Your telegram in answer to mine was forwarded to me at St. Louis, as I had left this city before the same arrived. I am engaged in the construction and building of railroad stock for southern railroads. I have heard of your patent car door, and I would like to see you and model of your invention. I would call to see you at Elkhorn, but my business engagements will not allow me the time to do so. I will be at the Washington House, Chicago, on Friday, May 10th, 1867, when I would be pleased to meet you, if convenient. If you cannot

38          WANZER *et al. v.* BRIGHT.          [Sept. T.,

Opinion of the Court.

come in person, will you please send me a circular and draft
of your patent? If the thing suits I would be willing to pay
a liberal figure for it.          Yours respectfully,

J. M. MANNING."

" P. S. I will be at the Washington House also on Saturday,
May 11th."

It seems that this was dictated by Kreamer, and was in the
handwriting of Hunter, then a clerk in the law office of
Kreamer's firm.

Appellee came to Chicago on the morning of the tenth of
May, and went to the Washington House, and there met
Kreamer, Hunter and the deputy sheriff, and was at once
arrested on a capias at the suit of appellants. Being unable to
procure bail he was committed to jail, where he remained for
four days. Cram swears that appellants, after the arrest was
made, stated to him that they had played a sharp trick on
Bright to get him to Chicago. They wanted their pay and
were going to get it. That they trapped him here by sending
the letter to him that a man in St. Louis wanted to buy his
patent right.

Appellants, it seems, offered to release appellee from
custody if he would give his father's note, or endorsement,
but he declined to involve his friends. He offered to secure
them by placing his patent right in their hands, and secure
them on his homestead. This they declined. A motion was
made in the superior court, and the judge ordered the release
of appellee. Appellants' attorney was present in court. This
occurred on the 14th day of May, four days after his arrest
and imprisonment.

Thereupon an affidavit was prepared and sworn to by
Wanzer, and a capias was issued in favor of Barney & Co.,
who lived in Ohio, upon which appellee was again arrested
and detained in custody.

Appellee was again taken into court and a motion was made
for his discharge; and Story swears the judge advised his

discharge, as he could not be held legally, but Jenks, the attorney of record for plaintiff, declined, and the motion was continued until the 15th that notice of the motion might be given him under the rules of court. He says Jenks asked time to consult his clients, and refused to discharge appellee, although informed by the judge that he should discharge him. Appellee was again taken to jail, where he remained until the next day, when the motion was heard on affidavits and he was again discharged.

Thereupon this suit was brought, and a trial was had, resulting in favor of appellee, the jury finding a verdict in his favor for $1,000, upon which a judgment was rendered.

It is urged that the evidence does not implicate Cromwell in procuring the last arrest. From a careful examination of the evidence we have no hesitation in saying it fully warranted the conclusion that he took part in the proceeding. The power of attorney from Barney & Co. is to both appellants, and Wanzer swears that he and Cromwell consulted as to which of them should swear to the affidavit, and Cromwell swears that he and his partner were together when these claims were placed in the hands of their attorneys for collection, and he expected appellee to be arrested. It is true that he did not participate directly in employing Jenks, but his partner retained him at the instance of Kreamer. From a careful consideration of all the evidence on that point we fail to see how the jury could have found otherwise than they did.

It is sought to screen appellants from the consequences of their fraudulent act by placing the whole responsibility of this wanton and indefensible act in enticing appellee into the State, upon Kreamer, their attorney. It is true, he seems to have dictated the communications, and so far as we can see, caused, without authority, the name of another person to be signed to them. But this was after consultations were had between them as to the means of collecting their debt. We may readily infer that it was done as a part of a plan agreed to be adopted. If such was not the fact it is a remarkable coincidence that

the affidavit was sworn to on the same day the telegram bears date. It would hardly seem probable that it could have been accidental. And Cram swears they admitted their participation in the fraud, and he is a disinterested witness. But if it were not so, then Kreamer was their attorney, and this act was done under his retainer. They fully approved of the act by refusing his discharge after they must have known how his presence was procured, and by their admissions, if Cram is to be believed, that they had entrapped appellee into Chicago and had "played a sharp trick upon him" to get him there. These and other circumstances are strong evidence that if they did not suggest the movement, they unqualifiedly approved it. We can see no pretense for saying they were not responsible for the wanton and wrongful act, if Cram may be credited, and was for the jury to say whether they would give credit to him, or to appellants and their attorney, who were interested. The jury having believed him and disbelieved the others, we can not say they should have done otherwise.

Had these parties seized and forcibly brought appellee into the State, there is no doubt they would have been guilty of a crime, and could have been punished for its commission. That would have been a wrong which all civilized countries punish criminally. And it may be asked in what a case of procuring the presence of a person in this State by such a fraud, and then imprisoning him, differs in principle from the use of force for the purpose. It is true, the statute has not declared that such an act shall be punished criminally, but the injury to the party and the outrage to personal security is the same. It was a fraud on appellee and upon the process of the court that we presume never has or can be sanctioned by courts of justice.

It is a firmly established rule of practice that courts will never permit the fraudulent use of their process. And when it is attempted, the court will promptly interfere to prevent its process from being made the instrument for effectuating the fraud, by setting it aside. It can never be tolerated that such

process shall be debased to the purpose of fraud and oppression. The pure fountains of justice can never be so polluted. The courts were created for the administration of justice, and they and their process can never be used for the purpose of oppression and to perpetrate fraud and wrong, or their process fraudulently obtained and employed to enforce a right, however just and legal.

An examination of the English authorities in the course of centuries, so far as we can find, fails to afford us more than one or two precedents in this character of fraud and imposition. And it is to the honor of the English bar that in the many centuries of the past only these are found, where members of the profession have resorted to such practices. In the case of *Stein* v. *Valkenhuysen*, 1 Ellis, B. & E. 65, the debtor lived and the debt was created, abroad, and he was enticed, as in the present case, from his home to the residence of his creditor by the use of a letter over a fictitious name, and on his arrival he was arrested. Mr. Justice WIGHTMAN, in delivering the opinion, says :

"Having no doubt that defendant was lured to this country by the fraud of plaintiff, when he never would have come had he known the truth, it seems to me the plaintiffs are disabled from taking advantage of their own fraud. Bringing him here by fraud, has as least as much effect as if there was an express promise by plaintiffs that he should not be arrested. I proceed upon the ground that a party cannot avail himself of his own fraud." And Mr. Justice CROMPTON says : "The process of the court has been abused. * * * The case is the stronger, as the debt, debtor, residence and everything is foreign. The whole was an abuse of process, and it must be set aside;" and see *Granger* v. *Hill*, Bing. New Cases, 328.

It has been repeatedly held in this country that no court will take jurisdiction of a party where it is obtained by fraud. Nor is a defendant amenable to process unless he is in, or comes voluntarily within the territorial jurisdiction of the court.

*Williams* v. *Bacon*, 10 Wend. 636 ; *Snelling* v. *Watrous*, 2 Paige 314 ; *Carpenter* v. *Spooner*, 2 Sandf. N. Y., 717 ; *Leaver* v. *Robinson*, 3 Duer 622. No rule of law is more uniformly recognized and enforced than that a valid and lawful act cannot be accomplished by unlawful means, and in such cases, courts will restore the injured party to his rights or compensate him for the wrong. And we recognize the rule as well settled, that an action may be maintained where a party has been fraudulently induced to come within the jurisdiction of the court, so as to render himself, or his property, amenable to its process. There can be no question that an action can be maintained in such a case.

It is, however, urged that the jury were not warranted in finding punitive damages in this case. Appellants acted with a wanton recklessness of the rights of appellee. They caused him to be arrested and incarcerated in the common jail for five days. They refused to release him even after they were aware of the manner in which he was induced to come within the jurisdiction of the court, if they did not participate in pro curing it. They thus manifested a degree of malice and persistence in their unlawful course that is seldom encountered among even the most perverse men. The wrong to appellee being so great, and appellants persistence in its infliction being so obstinate, we can only imagine that it was dictated by malice, and a reckless disregard for the rights of their fellow men. Such being the case it called for punishment that would teach them and others that they have no right to prostitute the process of courts to the unjustifiable purpose of gratifying their revenge. In this case there was an abuse of the process of the law to gratify malice, or to attain improper ends, we have no doubt, and if there was not actual malevolence, there was recklessness, from which malice must be inferred. This is the first instance in which the process of the courts of our State has been used in this manner, and we think the conduct of appellants and their attorney was outrageous, and deserved severe punishment, and we should have been better satisfied

had the damages been much larger than the jury have found. The principles here announced were not contravened by the court, and the judgment must be affirmed.

*Judgment affirmed.*