(No. 26738.—Judgment affirmed.)

*In re* HELEN CALHOUN CASH, Appellant.—(METROPOLITAN TRUST COMPANY, Conservator, *et al.*, Appellees.)

*Opinion filed May 20, 1943—Rehearing denied Sept. 15, 1943.*

FULTON, J., took no part.

SMITH, J., dissenting.

ORR, VAIL, LEWIS & ORR, and HENRY W. DIERINGER, (WARREN H. ORR, and LOREN E. LEWIS, of counsel,) for appellant.

CHARLES J. SEIDEL, State's Attorney, and IRVING B. CAMPBELL, (W. BEN MORGAN, of counsel,) for appellees.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

Appellant, Helen Calhoun Cash, prosecutes this appeal to reverse a judgment of the Appellate Court for the Second District, which affirmed a judgment of the circuit court of Kane county dismissing her petition to vacate an order of the county court of that county, adjudging her insane. The petition for inquisition was filed in the county court of Kane county, May 19, 1938. Notice was served on appellant on May 21, and on May 23 a hearing by a commission of physicians appointed by the county judge, at which the judge and appellant were present, was held in the Resthaven Sanitarium. Upon the report and findings of the commission being filed, the court, regularly convened, entered an order adjudging appellant to be insane. No appeal was taken from that order and it is not contended that appellant is not now or was not then insane.

On September 1, 1938, on appellant's behalf, a petition was filed in the county court to set aside the adjudication of·insanity on the ground that the entire proceedings were void because appellant was shown to be a resident of Cook county and had been removed to Kane county by fraud and duress, and that she was not "found" in Kane county within the meaning of that word as used in the Lunacy Act. (Ill. Rev. Stat. 1941, chap. 85, par. 3.) The county court dismissed the petition. On appeal to the circuit court a trial de novo was had and the petition was again dismissed. From that order an appeal was taken to the Appellate Court for the Second District, which court, for failure of appellee to file briefs, reversed the case pro forma and remanded the cause to the circuit court. When the cause was redocketed in the circuit court, an amended petition was filed on appellant's behalf which was also denied. An

appeal to the Appellate Court resulted in an affirmance of that order and leave to appeal to this court was granted.

It is alleged in the amended petition in substance: (a) that at the time of the commencement of the action, appellant was, and from thenceforth has been, a resident of Cook county and at no time was she "found in Kane county" within the meaning of the statute; (b) that on the night of May 3, she was confined to and held a prisoner in a room at the Stevens Hotel in Chicago, by her sister and a nurse; (c) that on the afternoon of May 4, she was removed from the Stevens Hotel and taken by her sister and a nurse to Parkway Sanitarium in Chicago and there locked in a room with a nurse present preventing and restraining her from communicating with friends and attorneys as she desired and that she was kept a prisoner there that night; (d) that on May 5, she was removed from the Parkway Sanitarium by her sister and others and taken to Resthaven Sanitarium against her wishes; (e) that upon arriving there she was locked in a room and held a prisoner against her wishes and was not permitted to communicate with her friends and attorneys until long after May 23, 1938; (f) that she was brought into Kane county by fraud, misrepresentation, trickery, threats and duress; (g) that there was no sheriff, bailiff or clerk present at the hearing, and that she was not advised and was not aware that a court proceeding was being held and that she was not asked if she desired counsel or a trial by a jury; (h) that a fraud was perpetrated on the court by the signing of the petition by Veronica Kelley because there is no such person, and (i) that all the persons named in the lunacy petition by whom the facts could be proved, are connected with the Resthaven Sanitarium, except Doctor Nerancy.

The prayer of the petition, as amended, was that all the orders entered in the cause be expunged for lack of

jurisdiction and because entered without due process of law. An answer denying the material averments of the amended petition, with a reply thereto, tendered the issues of fact on which appellant, to succeed, must sustain the burden of proof.

A motion to dismiss the appeal has been taken with the case. In support of the motion, suggestions are submitted that no appeal is allowed under the Lunacy Act other than from the county court to the circuit court and that since the statute specifically provides for an appeal to, and a trial *de novo* in, the circuit court it amounts to an implied denial of any other right or method of review except by *habeas corpus* as provided in section 24 of the Lunacy Act. Suggestions in opposition to the motion to dismiss raise the points that the Lunacy Act does not specifically deny the right of appeal which has been recognized both by this court and by the Appellate Court, and that an appeal is authorized by section 77 of the Civil Practice Act and section 122 of the act in relation to county courts.

Under the Lunacy Act of 1874 no provision was in cluded for any appeal from an order adjudging insanity, and this court held in *People ex rel. Fullerton* v. *Gilbert,* 115 Ill. 59, that no appeal from such an order would lie. The argument that section 122 of the act in relation to county courts was applicable to such proceedings was expressly rejected.

Section 7 of the present Lunacy Act, which was passed in 1893, (Ill. Rev. Stat. 1941, chap. 85, par. 7,) provides that the rights of the person whose mental condition is inquired into shall be the same as those of any defendant in a civil suit, and while this is a petition to set aside the order of the county court on the ground that appellant was fraudulently taken into Kane county, it is germane to the issue of lunacy, and the rights of the defendant, the appellant here, are directly affected. Section 7 provides that

the rights of the person whose mental condition is inquired into shall be the same as those of any defendant in a civil suit, and section 11 of the act as it existed when this petition was filed, and which controls in this case, specifically provided that "appeals shall be allowed to the circuit court from any order or judgment made or rendered under this act." (Ill. Rev. Stat. 1937, chap. 85, par. 11.) If we are to give any meaning at all to the language of section 7, it must mean that the general laws in regard to the rights of defendants are to be applicable to proceedings under the Lunacy Act. Under such construction the appellant here would have the right of appeal from the final order or judgment of the circuit court as provided by the Civil Practice Act. Ill. Rev. Stat. 1941, chap. 110, par 201.

In *Neely* v. *Shepherd,* 190 Ill. 637, this court assumed jurisdiction to review an Appellate Court judgment rendered in an appeal from a judgment of the circuit court entered after a trial *de novo* in an appeal from the county court.

In *Haines* v. *Cearlock,* 184 Ill. 96, this court took jurisdiction on a writ of error to review an order of the county court entered in an insanity inquest, but the writ was dismissed. This court did not, however, notice or discuss the right of review. We are of the opinion, therefore, that under section 11 of the Lunacy Act as it existed at the time the petition was filed and under section 7 of such act, and section 77 of the Civil Practice Act, the Appellate Court and this court, on appeal, have jurisdiction to review judgments of trial courts in proceedings under the Lunacy Act, and that appellees' motion must be denied.

The first question on the merits with which we are faced is whether the order assailed is void because the county court of Kane county had no jurisdiction. No question is raised as to the jurisdiction of the subject matter. The law confers jurisdiction on county courts to hear

and determine questions presented in lunacy inquisitions. The controversy hinges on what is the proper venue in such cases as this. Diligent search has failed to supply any decisive case. Resort must be had, therefore, to general principles, taking into consideration any conditions detailed in this record.

Appellant contends, and there is considerable evidence to support, that she is a resident of Cook county, although there is abundant proof that she was still a resident of Texas. She was considered, in the petition upon which the inquiry into her sanity was based, as residing in Cook county. The proof shows that she had resided in Texas and in Chicago and was in Florida shortly before she was brought to the Stevens Hotel in Chicago. That she was in jail in Florida and was aided by Miss Keeler, a friend from Whiting, Indiana, and by her sister, a doctor of Albany, New York, is uncontradicted. Both made the trip to Florida to assist her because she was in difficulty. It is not denied that she was declared insane by the probate court in Florida.

The record conclusively shows that appellant was given notice of the hearing two days prior to May 23. It is as conclusively established that she was physically present in Kane county when notified and she was present at the inquisition. No one doubts her physical presence in the county on May 19, when the petition for the inquiry was filed.

Where a person claimed to be insane is actually found and duly served with notice in a county, he is properly "found," within the county, within the meaning of the statute, unless he was there by reason of some fraud or duress on the part of someone in order to obtain service or confer jurisdiction in that county. That rule has been applied under statutes using the words, "may be found." *Willard* v. *Zehr*, 215 Ill. 148; *McNab* v. *Bennett*, 66 Ill. 157.

It is quite true that courts will not tolerate an abuse of process by which a party is brought within the jurisdiction of the court through some fraud or duress for the purpose of obtaining service or of conferring jurisdiction in a particular county. The cases of *McNab* v. *Bennett*, 66 Ill. 157, and *Wanzer* v. *Bright*, 52 Ill. 35, are relied upon by appellant as rendering this rule applicable in support of the argument that appellant was not "found in" Kane county. An examination of those cases discloses that the question was presented under totally different aspects from that which appears in the record before us.

The record in the instant case is destitute of proof that appellant was confined and held prisoner in a room in the Stevens Hotel on the night of May 3, 1938, by her sister and a nurse. She testified on both direct and cross-examination, after which the court interrogated her. She testified that she built a home in Texas, moved a great deal of her furniture there, voted in that State, and intended when she went there, to make her home in the Rio Grande Valley. She considered herself a resident of Texas, was made president of a landowner's association and expected to make that her permanent residence. Some of her goods were still in Texas at the time of the hearing. She testified she returned to the Broadview Hotel in Chicago the latter part of 1936, to re-establish her residence in Cook county, but left there for Florida in the latter part of 1937. She had been in Florida since December, 1937, when she encountered her difficulty. When Miss Keeler and her sister, Doctor Horner, came to Florida to assist her in her trouble, she made up her mind absolutely to return to Illinois because the doctors said she had to have medical attention and she said she was coming back to get the care she needed. She testified that she came back to Illinois voluntarily. She had no trouble with her sister or Miss Keeler. When she arrived in Chicago she went voluntarily to the Stevens Hotel because it was centrally located, and registered under

her own name. She and her sister called Doctor Low, with whom appellant was acquainted, and the services of Gladys Preston, a nurse, were obtained. Appellant called the First National Bank about honoring a check she was going to cash at the hotel. She remained at the Stevens one night in charge of the nurse. From the testimony of the nurse it appears that nothing was said about taking appellant to Grant Hospital, as claimed by appellant. When they left the Stevens the nurse knew they were going to the Parkway Sanitarium. Appellant was dissatisfied with the room at the Parkway Sanitarium and her sister expressed a similar impression of the room. Since Doctor Horner lived in Albany the natural inference is that Doctor Low recommended the Parkway. Seeing her sister in distress, Doctor Horner, the evidence shows, arranged for her to be taken the next day to Resthaven Sanitarium, in every respect a highly desirable institution for the care and treatment of mental patients. There is no evidence of any force being used, nor of any deception practiced by anyone to get her into Kane county. There is no evidence, presumption or inference that anyone had any purpose or motive, in taking her there, to submit her to the jurisdiction of the county court of Kane county other than for her own welfare.

There is no proof of any wrongful detention for more than ten days without an adjudication of insanity. Appellant made no effort to leave the Stevens Hotel, the Parkway Sanitarium or Resthaven. While she testified that she was unable to communicate with her attorney, there is no proof of anyone interfering with her liberty in contacting friends or her attorney. If she had felt aggrieved at being detained, she was entitled to a hearing for her release by a *habeas corpus* proceeding. The proof fails to show any state of facts comparable to the circumstances in the case of *Crawford* v. *Brown*, 321 Ill. 305, where the woman who was placed in an asylum was not proved to

be insane or dangerous to herself or others. In that case the doctor and nurse forcibly administered morphine so that the woman could be taken to the institution against her will. It is apparent, in the instant case, that efforts were being made for the welfare of appellant and that the proof fails to establish the charges of fraud or duress in bringing appellant into Kane county. The record further discloses timely notice given by the State's Attorney on the order of the court, the presence of appellant at the hearing and the presence of the judge.

It is argued that the order of the county court was void because the oral proof shows that there was no sheriff, bailiff or clerk present at the hearing. This court has held that a sheriff and clerk are essential to a court in order for it to exercise judicial powers. (*Witter* v. *Cook County Comrs.* 256 Ill. 616.) The judge, however, exercises the judicial power with such assistants as he may lawfully have to aid him. The Lunacy Act authorizes the judge to appoint a commission of physicians, who, in his presence, conduct the inquisition, make and file with the clerk their report and findings as to the respondent's sanity, and upon that report the judge pronounces his judicial order and the clerk enters it of record. The record in this case shows, by the convening order, that the sheriff, State's Attorney and clerk were present when the order was entered. The record, in that respect, imports verity and cannot be impeached by oral testimony. *People* v. *DeLisle,* 374 Ill. 437.

The power and control over the person of lunatics is controlled by the Lunacy Act. The State has delegated, by statute, its special commission to the county judge to hold inquisitions into sanity. If a jury trial is demanded, the court must give the party such a trial. If the court is of the opinion that a hearing should be had by a commission of physicians, he may appoint them. When the judge acts in the capacity of a court, the court must be legally constituted. But when he is merely holding a hear-

ing with a commission of physicians he is not attending so much in his character as judge as by virtue of a statutory duty for taking evidence, upon which his judicial authority is subsequently exercised when the commission's report and finding is filed, at which time he may enter an order in accordance with the finding of the commission or he may set aside the finding and dismiss the proceedings and may enter such order as he deems proper for the disposition of the person alleged to be insane. (Ill. Rev. Stat. 1941, chap. 85, pars. 10 and 11.) At the time of entering the order, the court must be legally convened, as that is the time he exercises his judicial functions. The record conclusively shows by the convening order that the court was duly constituted at that time, with the sheriff, State's Attorney and clerk present.

The final point argued is that the hearing was improperly held at Resthaven Sanitarium, in the absence of an affidavit showing appellant's inability to attend court. This contention deserves no serious consideration. That point was not raised either in the county or circuit court and questions not raised below are not subject to review. The county judge exercised his statutory authority to fix a time and place for the hearing and he issued his warrant for the production of the person at that time and place.

The record is free from prejudicial error and the judgment of the Appellate Court is therefore affirmed.

*Judgment affirmed.*

Mr. JUSTICE FULTON took no part in the consideration or decision of this case.

Mr. JUSTICE SMITH dissenting:

Section 4 of the Lunacy Act (Ill. Rev. Stat. 1941, chap. 85, par. 4,) after providing for the issuance of a writ commanding the person who has custody of the person alleged to be insane to produce such person before the

court, further provides that, "in no case shall such hearing take place until the person alleged to be insane shall have been notified *as the court shall direct.*"

In *Haines* v. *Cearlock,* 184 Ill. 96, it was said: "The necessity of a notice to the party to be deprived of property or liberty in such a proceeding was declared in *Eddy* v. *People,* 15 Ill. 386. In that case, the court, speaking upon that subject, said: 'If he be in fact a lunatic the notice would be undoubtedly useless; but that is the very question to be tried, and until a regular trial is had or inquest made the presumption is in favor of his sanity. The consequences resulting from the determination are of the most momentous character to the lunatic, both personally and pecuniarily, and so long as it is possible that a sane person might, upon an *ex parte* examination, be found to be insane, every principle of justice and right requires that he should have notice and be allowed to make manifest his sanity, and to refute or explain the evidence tending to prove the reverse. The idea is too monstrous to be tolerated for a moment, that the legislature ever intended to establish a rule by which secret proceedings might be instituted against any member of the community, by any party who might be interested, to shut him up in a madhouse, by which he might be divested of his property and his liberty without an opportunity of a struggle on his part. Should such a principle be sustained, the most sane man in the State is liable to be surprised at any moment by finding himself bereft of his property and on his way to a lunatic asylum. Such justice as this would be worthy of that dread tribunal the *holy vehme,* whose first notice to its victim was the execution of its sentence, but it cannot be tolerated where just and equal laws prevail and can be enforced. If the party be actually lunatic the notice can do no harm; but if he be sane it is of the most momentous importance to him, and, at any rate, it must be his legal right'." It should be noted that the stat-

ute, as it existed at the time the case of *Eddy* v. *People*, 15 Ill. 386, arose, contained no express provision for notice to the person alleged to be insane. (Rev. Stat. 1845, chap. 50, sec. 1.) In 1893 and prior to the decision in *Haines* v. *Cearlock*, 184 Ill. 96, the statute was amended so as to provide for such notice. This statute, as amended in 1893, is section 4 of the Lunacy Act, as it now exists.

With reference to the character of the notice to be given to the person alleged to be insane, it was further observed in *Haines* v. *Cearlock*, 184 Ill. 96: "Regarding notice, the statute provides that in no case shall a hearing take place until the person alleged to have been insane shall be notified *as the court shall direct*. The character of notice is left to the sound discretion of the court * * * ."

In *Behrensmeyer* v. *Kreitz*, 135 Ill. 591, this court also quoted with approval from *Eddy* v. *People*, 15 Ill. 386, as follows: "In *Eddy* v. *The People*, 15 Ill. 386, and long prior to the adoption of any statute requiring notice to the supposed insane person in a proceeding *de lunatico inquirendo*, it was held by this court that reasonable notice to such person was necessary, and even in a case when the supposed insane person actually appeared by counsel and examined the witnesses. Section 2, chapter 86, of the Revised Statutes, provides that in a proceeding to ascertain whether a person be lunatic or distracted, 'summons shall be issued and served upon the person for whom a conservator is sought to be appointed, in the same manner as summons is issued and served in cases in chancery.' Most important rights, both personal and pecuniary, of the person against whom such application is made, are involved in the investigation, and the word 'shall,' in the statute, must be regarded as mandatory. In this case the record shows only nine days' service of summons before the date of hearing and judgment, and that the service was by reading. Under the statute, service was required to be made by delivering a copy of the summons, and at

least ten days before the hearing. (Rev. Stat. chap. 22, sec. 11.) There was no waiver of irregularities by Weisenberger on account of his personal appearance in the proceeding, for an insane man is incompetent to waive any right, and the appellant here can not afford to admit that he was not insane. The finding and adjudication, and appointment of a conservator, were void for want of jurisdiction, and the court properly excluded them as evidence."

In *Eddy* v. *People*, 15 Ill. 386, it was shown that the person alleged to be insane actually had notice and appeared at the hearing by his counsel and participated in the examination of witnesses. It was argued that this was sufficient. In disposing of this contention the court said: "It is said in this case, that the supposed lunatic did have notice, and actually appeared by counsel and examined the witnesses, and that we should presume notice was given till the contrary is shown, upon the principle that we will presume that the court below proceeded regularly. If notice was given the record should show it affirmatively. How is it possible upon this writ of error for the plaintiff to show the negative and prove that he had no notice? This case must be tried by the record, and neither party can introduce other evidence to contradict, explain, or enlarge it. The record should have shown the notice. But this is not a case of first impression. The case of *Chase* v. *Hathaway* is analogous to this in every essential particular, and is precisely in point. The court there said, 'there being no provision in the statute for notice to the party who is said to be incompetent, by reason of insanity, to manage his estate, it seems that the judge of the probate did not think such notice essential to his proceedings. But we are of opinion that, notwithstanding the silence of the statute, no decree of a probate court so materially affecting the rights of property and the person, can be valid unless the party to be affected has had an opportunity to be heard in his defense'." For the reason that the

record did not show that notice was given, it was held the court below was without jurisdiction and its adjudication a nullity.

Section 4 of the Lunacy Act, as amended in 1893, does not provide the character of notice to be given to the person alleged to be insane. It provides, however, that such person shall be notified "as the court shall direct." Where the statute provides that the court shall fix the notice to be given, it is indispensable that an order be entered fixing such notice. A notice given without such previous order of the court, fixing the kind and character of the notice to be given is a nullity, and does not confer jurisdiction. on the court.

In *Reizer* v. *Mertz,* 223 Ill. 555, the court construed an identical provision with reference to notice in the Administration Act. It was there said: "Section 112 of the Administration Act provides that the heirs of the decedent shall be notified of the intended final settlement before its approval, 'in such maner as the court may direct,'—that is, the court may direct that the notice of final settlement be actual or constructive; and, regardless of what the law may be where the heirs have actual notice of the presentation of the final report of an administrator or executor and application for discharge, clearly, if the notice is constructive, the court must fix the character of notice to be given the heirs before the notice is given. Here it is apparent the court took no action with reference to the notice provided by the statute to be given the heirs before the notice of the intended final settlement and application for discharge of the executor was given. The notice relied upon was given in October and the report was not filed until November. The fixing by the court of the manner in which the notice of final settlement and application for discharge is to be given, where the notice is constructive, is jurisdictional, and no constructive notice can be given to a non-resident heir of final settlement and application

for discharge which will be binding upon him, unless the court has fixed the manner of giving notice, by an order entered of record, prior to the time such notice is given."

Under the above authorities, if there is no order of the court directing the kind or character of the notice to be given, the court is wholly without jurisdiction to proceed with the hearing. As said in the case of *Haines* v. *Cearlock*, 184 Ill. 96, such notice is indispensable to the jurisdiction of the court to proceed with such hearing. The lack of such notice could not be waived, or the giving of such notice dispensed with by the personal appearance of .Helen Calhoun Cash in the proceeding. She was incompetent to waive any right. *Behrensmeyer* v. *Kreitz*, 135 Ill. 591.

There is contained in the record in this case a transcript of the proceedings in the county court. This transcript discloses that on May 19, 1938, a petition was filed alleging that Helen Calhoun Cash was insane or suffering under mental derangement and unsafe to be at large. This petition was signed by Veronica Kelley, an employee of Resthaven Sanitarium. It was sworn to before Minnie Goll, a notary public of Kane county, Illinois. She was also an employee of the sanitarium. No affidavit was filed showing that the physical or mental condition of Helen Calhoun Cash was such as to prevent her attendance in court, as provided in said section 4. On the contrary, there was endorsed on the back of the petition what purports to be an order of the county judge for the issuance of a writ of detention, directed to Libby .Goll. Such writ was issued. It commanded Libby Goll to produce Helen Calhoun Cash before the court at the time fixed for the hearing. There is also endorsed on the back of the petition, over the signature of the county judge, what purports to be an order setting a hearing for May 23, 1938, at 10:00 o'clock A. M., at the Resthaven Sanitarium, and appointing two physicians as commissioners. Entirely

separated and wholly disconnected from any other written or printed words either on the face or back of the petition, the words, "Give respondent at least 24 hours notice of hearing," appear. These words are not addressed to anyone, nor does it appear by whom they were endorsed on the petition. They do not purport to be over the signature or name of the county judge, or to be an order entered by him. They are wholly separated from the purported orders above referred to. The name or signature of the county judge does not appear in connection with these words. The statute directs that the notice shall be fixed by the "court," not by the "judge."

To whom the word "respondent," in the endorsement, refers, nowhere appears. There is no one connected with either the petition or the proceedings, except Libby Goll, who could be properly identified as "respondent." No one is named or referred to in the record as respondent. There is nothing in the record from which anyone could be identified as "respondent," except Libby Goll. The only writ ordered to issue was to be directed to her. She was the "respondent" to be named in the writ. Clearly the reference to twenty-four hours' notice is to Libby Goll, the respondent, named in the only writ ordered to issue. These words, even if they were contained in an order of the court properly entered, would be wholly insufficient as fixing the kind and character of the notice to be given to Helen Calhoun Cash, as required by section 4 of the Lunacy Act. They are not contained in what purports to be an order of the county court, or even an order or direction of the county judge. They do not purport to direct or even indicate by whom notice shall be given.

Even if this endorsement was made by the county judge, it fell far short of an order of the county court required by statute as to the character of notice to be given to the person alleged to be insane. Jurisdiction to enter orders required by statute is vested in the courts and not

in the judges. (*Department of Public Works* v. *Legg*, 374 Ill. 306.) The judge has no power to make orders unless such power is specially conferred upon him by statute. (*Ling* v. *King & Co.* 91 Ill. 571.) A judge can not act judicially as a court in the absence of special statutory authority. (*Conkling* v. *Ridgely & Co.* 112 Ill. 36; *Durham* v. *Brown*, 24 Ill. 94.) It is well settled that judges can exercise no judicial functions except such as they are specifically authorized to do by statute. (*Devine* v. *People*, 100 Ill. 290.) The entry of an order as required by section 4 of the Lunacy Act, fixing the notice to be given to a person alleged to be insane, is an important judicial function, which can only be exercised by the court. The judge may order the issuance of a writ commanding the person having the custody of the person alleged to be insane to produce such person before the court for the hearing. Section 4 of the Lunacy Act expressly authorizes the judge to do this. But the statute specifically provides that notice to such person of the hearing shall be such "as the *court* shall direct." Clearly, the legislature used the word "court" in the last clause of section 4, advisedly and not as meaning the judge of the county court. By section 13 of the Lunacy Act (Ill. Rev. Stat. 1941, chap. 85, par. 13,) jurisdiction over insane persons, who are not charged with crime, is vested solely in the county courts.

The notice required by section 4 is in effect the process of the court. It must emanate from the court for the purpose of enabling the court to acquire jurisdiction of the person alleged to be insane. It is the same character of notice as that required by the former statute to be given to a minor in proceedings by his guardian to sell his real estate. Such notice constitutes the process of the court by which jurisdiction is acquired. (*Nichols* v. *Mitchell*, 70 Ill. 258.) When the statute requires a notice to be

given of the pendency of proceedings in a court, the notice given must be authentic. It is an essential quality of such notice that it be given by competent authority, and this must appear from the notice itself. If it shows on its face that it is the act of one having no authority, it is ineffectual to give the court jurisdiction. (36 Am. Jur., p. 237, sec. 9.) Here the applicable statute requires notice to be given under the order and direction of the court. To be effective, it must be ordered by the court. It must emanate from the court. It must be issued under the authority of the court. It must be served by like authority. The only way a court can give authenticity to its notices and process, is by certification under the hand of the clerk and the seal of the court.

The notice relied upon in this case is as follows:

"To HELEN CALHOUN CASH

"You are hereby notified that on Monday, the 23rd day of May, A. D. 1938, at the Resthaven Sanitarium, Elgin, in the said County of Kane, at the hour of 2:00 o'clock in the after noon, or as soon thereafter as counsel may be heard, before the HONORABLE OLNEY C. ALLEN, County Judge, proceedings will be instituted and a hearing had to inquire into the question of your alleged insanity, when and where you may appear and defend if you see fit so to do.

CHARLES A. O'CONNOR,
*State's Attorney."*

Endorsed on the back of this notice is a return showing that it was served on Helen Calhoun Cash on May 21, 1938. The return is signed, "Wm. T. Kruse, Constable."

The record does not disclose, and no claim is made, that any other notice was given to Helen Calhoun Cash. There was no order of the county court directing the character of notice to be given or the manner in which it should be given. It will also be noted that the order of the county judge endorsed on the back of the petition set the matter for hearing at the Resthaven Sanitarium for May 23, 1938, at the hour of *10:00 o'clock A. M.* The

notice signed by the State's Attorney and addressed to Helen Calhoun Cash recites that the hearing is to be held at *2:00 o'clock P. M.* on that day.

Obviously, the notice relied upon is nothing more than a letter written and signed by the State's Attorney. It does not purport to have been authorized or issued by the court. It did not emanate from the court. It is not signed by anyone authorized to act for the court or to issue notices or process of the court. It is, in no sense, official. So far as its authenticity is concerned, it might as well have been signed by any other county officer or individual, or by no one at all. It is not such a notice as the statute requires.

In the absence of a special order to the contrary, the clerk is the only person authorized by statute to issue notices ordered to issue by the court. Such notices, to be given authenticity, must be issued and tested by him, under the seal of the court. No one could seriously contend that the words found on the back of the petition, even if contained in an order properly entered by the court, would authorize the State's Attorney to issue such notice, or a constable to serve it. The signature of the State's Attorney gave it no authenticity. In the absence of a special order of the court directing a notice or process to be served by an individual, the sheriff is the only officer authorized by statute to make such service. (Ill. Rev. Stat. 1941, chap. 110, par. 130; Ill. Rev. Stat. 1941, chap. 125, par. 15.)

The only proof of service of the notice on Helen Calhoun Cash is the return of the constable endorsed thereon. A constable is. not an officer of the county court. His service of process or notice issued by the county court is not in his official capacity as constable. As constable he has no authority to serve such process. He could only be authorized to make such service as an individual, upon special order of the court, authorizing him to do so, not

as constable, but as an individual. The notice was not addressed to him—it was addressed to Helen Calhoun Cash. Officers are only authorized to make return of service of process where the statute authorizes them to make such service. (*Vennum* v. *Vennum,* 56 Ill. 430; *Ball* v. *Peck,* 43 Ill. 482.) Where a court is exercising a special statutory jurisdiction, as in this case, jurisdiction is never presumed, and if it does not appear from the record, the judgment will be void. *Fico* v. *Industrial Com.* 353 Ill. 74; *Brown* v. *VanKeuren,* 340 Ill. 118; *Vyverberg* v. *Vyverberg,* 310 Ill. 599; *Spring Creek Drainage Dist.* v. *Highway Comrs.* 238 Ill. 521.

Service of such notice as the county court shall direct is jurisdictional. Lawful evidence that such service has been made must be preserved in the record, otherwise the court is without jurisdiction. (*Drainage Dist.* v. *Highway Comrs.* 238 Ill. 521; *Vyverberg* v. *Vyverberg,* 310 Ill. 599; *Fico* v. *Industrial Com.* 353 Ill. 74.) In this case the record fails to show that any lawful notice was ever issued or served on Helen Calhoun Cash, as required by statute. There is no sufficient proof of service of any notice. Jurisdiction in special statutory proceedings is never presumed. It must affirmatively appear from the record. (*Ashlock* v. *Ashlock,* 360 Ill. 115; *Keal* v. *Rhydderck,* 317 Ill. 231.) Nothing will be presumed in favor of jurisdiction in the face of facts appearing in the record showing that it did not exist. (*Sharp* v. *Sharp,* 333 Ill. 267.) A recital of jurisdictional facts in the judgment is not sufficient where the lack of jurisdiction appears from the record. *People ex rel. Vaughan* v. *Sargent,* 252 Ill. 104.

Where the record itself shows the evidence upon which the court acted in finding that it had jurisdiction, no presumption of jurisdiction can be indulged, and where the record shows the evidence upon which the court acted is insufficient, the finding in favor of jurisdiction is not conclusive. The presumption of jurisdiction applies only

when the record is silent upon the question. *Sharp* v. *Sharp,* 333 Ill. 267; *Osgood* v. *Blackmore,* 59 Ill. 261; *Clark* v. *Thompson,* 47 Ill. 25.

Originally, in England, the custody and control of lunatics was vested in the King, who had authority to initiate an inquest as to the sanity of ᴛhe subject. Later, this authority was delegated to the Lord Chancellor as representative of the Crown. The Lord Chancellor, however, in exercising this authority, was not acting as Chancellor, but was exercising a very limited authority or jurisdiction conferred by special grant from the King. *People* v. *Janssen,* 263 Ill. App. 101.

The Courts of England never had jurisdiction over insane persons or their property. There was no proceeding known to the laws of England by which the courts could exercise such jurisdiction. In this country, the State, in its character as *parens patriae,* may lawfully exercise the same powers and control over the persons and property of lunatics and idiots that was exercised by the Crown of England through the Lord Chancellor. *Dodge* v. *Cole,* 97 Ill. 338.

That power in this State is exercised by the county courts by virtue of a special statutory jurisdiction conferred upon them. There was no proceeding known to the common law in England, in the courts, even comparable to the statutory powers conferred upon our county courts relative to the persons and property of those alleged to be insane. That a proceeding of this character in this State is a special statutory proceeding is clearly recognized and so treated in the following cases: *People ex rel. Fullerton* v. *Gilbert,* 115 Ill. 59; *McCormick* v. *Blaine,* 345 Ill. 461, and many other cases.

In the exercise of special powers conferred by statute, as distinguished from the exercise of jurisdiction according to the course of the common law, a court of general

jurisdiction does not differ from a court of limited and special jurisdiction. In such proceedings, nothing will be presumed to be within the jurisdiction where the jurisdiction does not distinctly appear from the record. (*Cobe* v. *Guyer,* 237 Ill. 516; *Watts* v. *Dull,* 184 Ill. 86; *Payson* v. *People ex rel. Parsons,* 175 Ill. 267; *Chicago and Northwestern Railway Co.* v. *Galt,* 133 Ill. 657; *Munroe* v. *People,* 102 Ill. 406.) In such cases, jurisdiction is never presumed, and if it does not appear, the judgment will be void. Whatever the rank of the court exercising a special statutory jurisdiction, it is governed by the same rules as courts of limited jurisdiction. Every fact necessary to put the court in motion and give jurisdiction must be in conformity with the statute granting the right. *Brown* v. *Van Keuren,* 340 Ill. 118.

As I view it, the record clearly shows that Helen Calhoun Cash was not "found" in Kane county, within the meaning of that term as used in the Lunacy Act. This court has said that a person is "found" in a county so that process can be served upon him, only when he has voluntarily gone into the county, or has been properly seized for a crime and taken into the county, in which case the law presumes he is voluntarily within the county. (*Willard* v. *Zehr,* 215 Ill. 148; *McNab* v. *Bennett,* 66 Ill. 157.) In my opinion, the evidence in this case is conclusive that Helen Calhoun Cash was taken into Kane county without her consent, forcibly and against her will, and there unlawfully detained for more than ten days prior to the time the inquest was held, and that she was not "found" within Kane county.

For the above reasons, I am unable to concur in the majority opinion.